LEVIN H. CAMPBELL, Circuit Judge.
 

 On February 12, 1976, the Attorney General of Massachusetts, acting for the Commonwealth, filed a complaint in state court against Vincent Hale (and two corporations said to be under Hale’s control) pursuant to the provisions of Mass.G.L. c. 93A, the so-called State Consumer Protection Act.
 
 See Slaney v. Westwood Auto, Inc.,
 
 366 Mass. 688, 322 N.E.2d 768 (1975) (describing the operation of c. 93A). The complaint alleged that the defendants had engaged in a variety of specified acts and practices proscribed by section 2 of the Act, which provides that, “Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.” Basically the complaint charged the defendants with making deceptive and misleading representations to purchasers of their products and with failure to perform contractual and statutory obligations.
 
 [1]
 
 The complaint indicated that the
 
 *145
 
 action had been commenced “on behalf of the individuals who have suffered harm” as a result of the defendants’ unlawful behavior,
 
 see
 
 Mass.G.L. c. 93A, § 4, and requested both injunctive relief and an award of damages “sufficient to make whole all consumers injured by the defendants’ [conduct].” Hale neither answered the complaint nor appeared to challenge its allegations. On August 4, 1976, state procedural and notice requirements having been met, the state court entered a partial default judgment against the three defendants on the issue of liability only.
 
 [2]
 
 Injunctive relief was granted with damages to be determined at a subsequent evidentiary hearing. Such a hearing was held in late January 1977, the court receiving testimony and affidavits of some 18 consumers. Hale again failed to appear. The court assessed damages in an amount in excess of $20,000, and Hale was later ordered to pay $50 per month towards satisfaction of that judgment.
 

 On January 23, 1978, Hale filed a voluntary petition in bankruptcy listing the Commonwealth as an unsecured creditor. The Commonwealth commenced an action in the bankruptcy court under section 17 of the Bankruptcy Act, 11 U.S.C. § 35, to have Hale’s debt to it declared nondischargeable. It subsequently moved for judgment on the record, contending that the issue of nondis-chargeability could be determined solely by reference to the record of the state court proceedings. Following oral argument on this question, the bankruptcy judge denied the Commonwealth’s motion, refusing to “accept the state court default judgment and record as conclusive proof of the issues relevant to dischargeability . . . .” The district court affirmed and this appeal followed.
 
 [3]
 

 The Commonwealth’s main argument is that through the doctrine of collateral es-toppel the state court default judgment for violations of the Consumer Protection Act provides sufficient basis for a finding of nondischargeability under sections 17(a)(2) and 17(a)(8) of the Bankruptcy Act, 11 U.S.C. §§ 35(a)(2) and (8).
 
 [4]
 
 It is far from settled, particularly in light of the 1970 Amendments to the Bankruptcy Act which grant the bankruptcy courts exclusive jurisdiction to find dischargeability, that “there is . room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of
 
 *146
 
 debts described in section 17(a)(2), (4), and (8) of the Bankruptcy Act.”
 
 In re Houtman,
 
 568 F.2d 651, 653 (9th Cir. 1978).
 
 See Brown v. Felsen,
 
 442 U.S. 127, 139 n.10, 99 S.Ct. 2205, 2213 n.10, 60 L.Ed.2d 767 (June 4, 1979). Several courts and commentators have taken the position that collateral es-toppel has no role to play in the discharge-ability determination.
 
 See In re Houtman, supra; In re Pigge,
 
 539 F.2d 369 (4th Cir. 1976);
 
 In re Blessing,
 
 442 F.Supp. 68 (S.D. Ind.1977); 1A Collier on Bankruptcy, ¶ 17.-16[6] at 1650.1-1650.2.
 
 But see In re Ross,
 
 602 F.2d 604 (3d Cir. 1979). There is the further question here, moreover, whether, even assuming collateral estoppel is generally applicable in section 17 discharge proceedings, the doctrine may be invoked where the prior judgment was entered by default.
 
 See In re McMillan,
 
 579 F.2d 289, 292 (3d Cir. 1978) (“[Bjecause the bankrupts did not ‘actually litigate’ the [state court] case, not even facts which were necessary to that [default] judgment can collaterally estop them from litigating the same issues in the bankruptcy case”).
 
 See also In re Mallory,
 
 Nos. B78-1521A; B78-1522A, slip op. (N.D.Ga. Nov. 20, 1979); IB Moore’s Federal Practice, ¶ 0.444[2] at 4005 and 1979-80 Cumulative Supp. at 204.
 
 But see United States v. McQuatters,
 
 370 F.Supp. 1286 (W.D.Tex.1973) (pre-1970 amendments).
 

 While the above questions are intriguing and might be critical in another case, they need not be answered here. Even assuming arguendo that ordinary concepts of collateral estoppel would be applicable in a bankruptcy dischargeability action where the state court judgment underlying the disputed debt has been entered by default, the Commonwealth would not be entitled to bypass a further hearing given the instant facts. Application of the doctrine of collateral estoppel could at most prevent Hale from relitigating in the dischargeability proceeding those matters “necessary” or “essential” to support the earlier entered default judgment.
 
 See
 
 IB Moore’s Federal Practice, ¶ 0.444[2] at 4005;
 
 Sandler v. Silk,
 
 292 Mass. 493, 500, 198 N.E. 749, 751-52 (1935); Watts v. Watts, 160 Mass. 464, 36 N.E. 479 (1894). Comparing the elements essential to establishing both a Chapter 93A, § 2 Consumer Protection Act violation and a section 17(a)(2) or (8) finding of non-dischargeability, we believe that the minimum misconduct required to make out a Chapter 93A claim falls short of that needed to support a section 17 nondischargeability determination.
 

 Chapter 93A, entitled “Regulation of Business Practices in Consumer Protection,” has been described by the Massachusetts Supreme Judicial Court as a “statute of broad impact” creating “new substantive rights and providing] new procedural devices for the enforcement of those rights.”
 
 Slaney v. Westwood Auto, Inc., supra,
 
 322 N.E.2d at 772.
 
 See Commonwealth v. DeCotis,
 
 366 Mass. 234, 316 N.E.2d 748, 755 n.8 (1974). The substantive heart of the statutory scheme, section 2, makes unlawful,
 
 inter alia,
 
 “unfair or deceptive acts or practices in the conduct of any trade or commerce . . The Massachusetts courts have made it clear that “the definition of an actionable ‘unfair or deceptive act or practice’ goes far beyond the scope of the common law action for fraud or deceit.”
 
 [5]
 

 Slaney, supra,
 
 322 N.E.2d at 779. Of critical importance to the present controversy is the fact that under Chapter 93A it is unnecessary for a prevailing plaintiff to
 
 *147
 
 establish that the defendant knew his allegedly deceptive representations were false; similarly, a Chapter 93A plaintiff need not prove his actual reliance upon defendant’s representations.
 
 Slaney, supra,
 
 322 N.E.2d at 779.
 

 The standards for nondischargeability under sections 17(a)(2) and (8) of the Bankruptcy Act are narrower. Under section 17(a)(2), which makes nondischargeable,
 
 inter alia,
 
 a debt based upon a liability for obtaining money or property by false pretenses or false representations, “[i]t must . . . affirmatively appear that [the] representations were knowingly and fraudulently made, and that they were relied upon by the other party.” 1A Collier on Bankruptcy ¶ 17.16 at 1635-36. In addition, a fraudulent intent to deceive is generally required.
 
 In re Houtman,
 
 568 F.2d 651, 655 (9th Cir. 1978) (debtor, among other things, must have made the representations at the time knowing they were false, with the intention and purpose of deceiving the creditor);
 
 Wright v. Lubinko,
 
 515 F.2d 260 (9th Cir. 1975). Likewise, to secure a finding of nondischargeability under section 17(a)(8) for willful and malicious injuries to the person or property of another the requisite knowledge and intent must be proven.
 
 See
 
 1A Collier on Bankruptcy ¶ 17.17 at 1652-53;
 
 Den Haerynck v. Thompson,
 
 228 F.2d 72, 74 (10th Cir. 1955).
 
 Cf. In re Nance,
 
 556 F.2d 602, 610-11 (1st Cir. 1977).
 

 Thus, it would be possible for a state court to find a violation of chapter 93A, § 2 for behavior which lacks the characteristics of misconduct necessary to support a section 17(a)(2) or (8) finding of nondischarge-ability. Given this, and the further fact that the complaint underlying the state default judgment lacked any allegation of the existence of the knowledge and intent required under section 17, we believe the entry of that judgment could in no event bind the bankruptcy court on the issue of nondis-chargeability.
 

 Notions of collateral estoppel aside, the Commonwealth argues alternatively, “there is a preponderance of evidence on record sufficient to establish nondischargeability.” In support of this argument the Commonwealth cites to various passages gleaned from the consumer affidavits introduced at the state court hearing on the issue of damages. We see no error, however, in the lower court’s refusal, without its own evidentiary hearing, to base a section 17 determination of nondischargeability entirely on these affidavits previously introduced at a hearing in the state court. The affidavits were received by the state court solely to establish monetary damages, rather than for the matters for which they are now cited.
 

 We are not unsympathetic to the Commonwealth’s concern that the Bankruptcy Act should not “be used as a shield by dishonest merchants to avoid liability for unfair and deceptive practices . . Nor are we favorably impressed by Hale’s consistent failure, despite fair notice, to appear at the prior state court proceedings. Nonetheless, in the circumstances of this case, considering the character of the underlying state statutory action and the nature of the Commonwealth’s complaint, the district court’s affirmance of the bankruptcy judge’s denial of the motion for judgment on the record was correctly entered.
 

 Affirmed. Costs for appellee.
 

 [1]
 

 . The defendants were engaged in the home improvement business. The complaint, following a summary of the factual allegations, states, in relevant part,
 

 “CAUSES OF ACTION
 

 17. The defendants and each of them have engaged in the following unfair or deceptive acts or practices which are declared to be unlawful by G.L., Chapter 93A, Section 2:
 

 a. Making representations in the sale or offering for sale which have the capacity, tendency or effect of misleading or deceiving purchasers or prospective purchasers with respect to material aspects of the product or service being offered .
 

 b. Representing that the purchaser’s or prospective purchaser’s house would be used as a model home for demonstration or advertising purposes and that such purchaser would be paid a rebate for any sale made in the vicinity of his house where earning the rebate was contingent upon the occurrence of an event subsequent to the time the purchaser entered into the agreement
 

 c. Interfering with a purchaser’s contractual and statutory . . right to cancel his agreement .
 

 d. Failing to fulfill or perform promises' or obligations arising under a guarantee . . .
 

 e. Failing to fulfill or perform promises or obligations arising under a contract . . .
 

 f. Representing that the purchaser or prospective purchaser has been specially selected to receive a bargain, discount or other
 
 *145
 
 advantage when such, in fact, was not true
 

 [2]
 

 . Hale’s subsequent motion to vacate the default judgment was denied.
 

 [3]
 

 . Neither party has addressed the question whether the denial of the Commonwealth’s motion for judgment on the record is an appeala-ble interlocutory order. Interlocutory orders in a “proceeding in bankruptcy” are appealable unless they are “trivial,” while such orders in a “controversy arising in a proceeding in bankruptcy” are nonappealable.
 
 See In re Lloyd, Carr & Co.,
 
 614 F.2d 17 (1st Cir. 1980);
 
 Good Hope Refineries, Inc. v. Brashear,
 
 588 F.2d 846 (1st Cir. 1978). Whether an interlocutory order was entered in a “proceeding” or in a “controversy” is often a murky question, as is the companion issue of triviality.
 
 See Lloyd, Carr, supra,
 
 at 19.
 

 The Fifth Circuit has held that an application for a determination of dischargeability is a “proceeding,” but has also ruled that denial of a creditor’s motion to dismiss the discharge-ability action for lack of jurisdiction is without “definitive operative finality” and is therefore nonappealable.
 
 In re Durensky,
 
 519 F.2d 1024 (1975). We see no reason to address the close issue of appealability herein. Our view of the merits compels affirmance,
 
 see
 
 infra; thus, however, we would come out on appealability, the Commonwealth could obtain no relief — and our views on the merits may provide useful guidance in recurring situations of this character.
 
 Cf. Manning v. Trustees of Tufts College,
 
 613 F.2d 1202, 1202 (1st Cir. 1980).
 

 [4]
 

 .Sections 17(a)(2) and (8) provide,
 

 “Debts Not Affected by a Discharge, (a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another; ... or (8) are liabilities for willful and malicious injuries to the person or property of another . . . .”
 

 [5]
 

 . Chapter 93A § 2 provides the following guide to interpretation,
 

 “(b) It is the intent of the legislature that in construing paragraph (a) of this section in actions brought under sections four, nine and eleven, the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.
 

 (c) The attorney general may make rules and regulations interpreting the provisions of subsection 2(a) of this chapter. Such rules and regulations shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting the provisions of 15 U.S.C. 45(a)(1) (The Federal Trade Commission Act), as from time to time amended.