**In re Robert J. NEE, Debtor.**

**BILLING SYSTEMS, INC., Plaintiff,**

v.

**Robert J. NEE, Defendant.**

**Bankruptcy No. 81–01203JG.**
**Adv. No. A84–0150–JG.**

United States Bankruptcy Court,
D. Massachusetts.

June 21, 1985.

Gary M. Feldman, Moulton & Looney, Boston, Mass., for plaintiff.

John Connell, Boston, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The Plaintiff's Complaint seeks a determination that the indebtedness owed by the debtor to the plaintiff in the approximate sum of $70,000 is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4) on the grounds that the debtor obtained money of the plaintiff by fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. The plaintiff also seeks a denial of the debtor's discharge under § 727(a)(4)(A) on the ground that the debtor, on his bankruptcy schedules, listed the debt owed to Billing Systems as a disputed contractual liability. A trial was held at which time the parties entered into certain stipulations, testimony was taken, and documentary evidence was introduced. Based upon the testimony, documents, and stipulations the Court makes the following findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

From January 1973 through November 1978, Robert Nee ("the debtor" or "Nee") served as the comptroller, accountant and

business manager for the Plaintiff, Billing Systems, Inc. ("Billing Systems"). Nee's responsibilities included preparation of all tax returns and supervision over and payment of Billing System's payroll. Nee provided these services for a weekly fee through entities controlled by him—Advanced Services Inc. and TSI Financial ("TSI"), a payroll service. Nee had access to all Billing's financial records, including checkbook, bank statements and deposit stamp. It was the weekly practice of Billing's bookkeeper, Cynthia Higgins, to make out a check, leaving blank the amount and sometimes the payee, and to deliver the blank check to Nee. The bookkeeper then would telephone Nee and inform him of the payroll amount. In numerous instances, Nee filled in an amount greater than the actual amount of the payroll, and made the check payable to his own company TSI Financial and deposited checks into TSI's account.

Nee admits that he embezzled monies from Billing Systems by alteration of the company's checks. In July 1982 he pleaded guilty to seven indictments of larceny in Middlesex Superior Court. Two indictments were filed without a plea. The Court sentenced Nee to two years in the House of Correction, the sentence was suspended, and ordered payment of restitution of $750 per month for three years. However, the Superior Court never made a determination of how much Nee embezzled in connection with the seven indictments. With respect to the seven indictments, at trial Billing Systems introduced six checks which it contends represent amounts misappropriated by Nee. However, Billing Systems did not introduce any evidence from which the Court could determine the amount embezzled by Nee in connection with the six checks. Neither the Superior Court pleadings nor the transcript in the criminal case reflect the total amount of restitution to be paid by Nee. Rather, the papers merely state that Nee was ordered to pay $750 for three years and if the total amount was not paid by that time, the term of probation was to be extended.

Billing Systems filed a civil action against Nee and obtained a default judgment on February 19, 1980 in the sum of $96,525.14. The judgment, introduced into evidence, does not disclose the basis for the judgment or the underlying nature of the action. Billing Systems contends that Nee stole an additional approximate amount of $32,000 during the course of his employment by alteration of checks. At trial Nee stipulated to the accuracy of Billings Systems' claims with respect to check numbers 2257, 20681, 32051, 31131, 34266, 31045, and 32481, and that he embezzled $9654.92 as a result of causing these checks to issue in an amount in excess of that actually required. Billing Systems introduced three additional checks in support of its claims.

On January 6, 1976, the plaintiff's bookkeeper, Cynthia Higgins, delivered to Nee plaintiff's check number 290, payable to TSI Financial and signed on behalf of the plaintiff by Cynthia Higgins. Check number 290 was delivered to Nee for the purpose of paying the plaintiff's weekly payroll obligations for the week of January 2, 1976. At the time that Higgins delivered check number 290 to Nee the amount of the check was left blank. Sometime after receiving check number 290 from Higgins, Nee entered the amount of $8,941.92 on the check, although Nee knew that the plaintiff's actual payroll obligation for the week of January 2, 1976 was $3,941.92. Nee caused the plaintiff to issue check number 290 in an amount $5,000.00 in excess of the plaintiff's actual payroll obligations, thereby obtaining the excess proceeds for his own use. On January 18, 1977 the plaintiff's bookkeeper, Cynthia Higgins delivered to Nee plaintiff's check number 34266, payable to TSI Financial and signed on behalf of the plaintiff by Cynthia Higgins check number 34266 was delivered to Nee for the purpose of paying the plaintiff's weekly payroll obligations for the week of January 15, 1977. At the time that Higgins delivered check number 34266 to Nee the amount of the check was left blank. Sometime after receiving check number 34266 from Higgins, Nee entered the amount of $8,758.51 on the check, although

Nee knew that the plaintiff's actual payroll obligation for the week of January 15, 1977 was $5,758.51. Nee caused the plaintiff to issue check number 34266 in an amount $3,000.00 in excess of the plaintiff's actual payroll obligations, thereby obtaining the excess proceeds for his own use. On March 27, 1978, the plaintiff's bookkeeper, Cynthia Higgins, delivered to Nee plaintiff's check number 31757, payable to New England Data Processing and signed on behalf of the plaintiff by Cynthia Higgins. Check number 31757 was delivered to Nee for the purpose of paying the plaintiff's weekly payroll obligations for the week of March 25, 1978. At the time that Higgins delivered check number 31757 to Nee the amount of the check was left blank. Sometime after receiving check number 31757 from Higgins, Nee entered the amount of $9,488.32 on the check, although Nee knew that the plaintiff's actual payroll obligation for the week of March 25, 1978, was $6,456.07. As a result of his fraudulent actions and embezzlement, Nee caused the plaintiff to issue check number 31757 in an amount $3,032.25 in excess of the plaintiff's actual payroll obligations, thereby obtaining the excess proceeds for his own use.

Billing Systems was alerted to the misappropriation by Nee in September of 1979 when the attorney for New England Data Processing Co. ("NEDP") called and informed Mr. Haughey, a principal of Billing Systems, that NEDP intended to file suit against Billing Systems as a result of a large unpaid balance. Subsequently Haughey became aware that the company's checking account was overdrawn when its bookkeeper believed there was a positive balance.

Billing Systems also claims that Nee embezzled from it in 1976. In December of 1976 the principals of Billing Systems, James Tourtillot and John Haughey and Nee became interested in a joint venture to purchase an inn and golf course on Cape Cod. Nee informed Tourtillot that the seller required a deposit of $10,000, when in fact only $1,000 was necessary. Tourtillot instructed his bookkeeper to draw a Billing Systems check payable to the trustee of the entity that owned the real estate. Tourtillot delivered the check (number 21844) to Nee with instructions to deliver it to the trustee. After receiving the check, Nee altered the instrument by adding TSI Financial as a payee. Nee then deposited the check in the TSI Financial account at the Shawmut Needham Bank. The trustee rejected the Nee/Tourtillot/Haughey bid by letter dated December 9, 1976 sent to a law firm, Bikofsky and Walker, Nee's attorneys in connection with the offer. Attorney Walker informed Nee that the offer had been rejected by letter dated December 15, 1976.

Although Nee does not deny embezzlement of Billing's funds, he questions the amount currently owed Billings, asserting that he is entitled to credit for certain repayments. Nee claims that on December 8, 1976 he repaid $9,000 of the $10,000 misappropriated in the Cape Cod real estate matter. The debtor introduced into evidence two checks dated December 8, 1976 payable to Billing Systems Inc. drawn on TSI Financial in the amount of $4,000 and $5,000 respectively which contain the notation in Nee's handwriting "reimb portion loan." It is clear from the back of the checks that both were deposited into Billing System's account.

Nee claims that he repaid $6,000 to Billings by a weekly deduction of $150 for forty weeks from Nee's salary during 1978. In support of this contention he offered a payroll register for the period one week ending October 7, 1978, which reflects that Nee's company, Advanced Services, earned compensation of $400 for this period, minus a $150 unspecified deduction. Nee also testified that $6000 was deducted to repay the $3000 he had embezzled in connection with the payroll week ending January 2, 1976. Both officers of Billing Systems testified that they never entered into a repayment agreement according to these or any other terms. Finally, Nee claims that he repaid Billing Systems $7100 on September 22, 1977. Exhibit 21 is a $7100 check drawn on TSI Financial payable to Billing

Systems dated September 22, 1977 which was deposited into Billings' account.

■■■ Section 523(a) of the Bankruptcy Code provides that a discharge in bankruptcy "does not discharge an individual debtor from any debt-..." (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. 11 U.S.C. § 523(a)(4) (Supp.1984). The phrase "while acting in a fiduciary capacity" qualifies the words "fraud or defalcation" and not "embezzlement or larceny." *In re Graziano*, 35 B.R. 589 (Bankr.D.N.Y.1983); *L. King, 3 Collier On Bankruptcy* § 523.14[1][c] 523–116 (15th ed. 1984). A civil default judgment obtained in state court does not establish the nondischargeability in bankruptcy of a claim unless each and every necessary element of the nondischargeability action was litigated and determined in the state court proceeding. *Comm. v. Hale*, 618 F.2d 143 (1st Cir.1980); *In re Longo*, 37 B.R. 900 (D.Mass.1984); *In re Poss*, 23 B.R. 487, 9 B.C.D. 823 (Bankr.E.D.Wisc. 1982). When the same issues are raised in a nondischargeability action as have been determined in a prior criminal proceeding, however, judicial economy favors giving preclusive effect to the criminal conviction. *J. Ferriell, The Preclusive Effect of State Court Decisions in Bankruptcy (Second Installment)*, 59 Am.Bankr.L.J. 55, 70 (1985). The grounds for nondischargeability of larceny or embezzlement under § 523(a)(4) are identical to those required to prove the crimes of larceny or embezzlement under Massachusetts law. *Compare* M.G.L. c. 266 § 30 (Supp.1983) (Mass. larceny statute) *with L. King 3 Collier On Bankruptcy*, § 523.14[3], at 523–116 (15th ed. Supp.1984) (bankruptcy definitions of larceny and embezzlement). If the prior proceeding did not establish the amount of the debtor's larceny, in a subsequent nondischargeability, the creditor must prove and liquidate the amount of the obligation in the nondischargeability litigation. *See* 59 Am.Bankr.L.J., *supra*, at 70 n. 297.

■■■ In the present case, the nondischargeability of Nee's obligation to Billing Systems was clearly established as it arose out of his larceny or embezzlement of funds from the plaintiff. The evidence supports the conclusion that Nee embezzled $22,768.12 from ten checks and $10,000 in connection with the real estate matter. It is impossible from the evidence presented however, to determine the amount Nee embezzled as a result of the six checks which served as the basis for the indictments. Billing Systems did not prove the amount Nee embezzled in connection with the checks for which he was indicted. Although Nee pleaded guilty in Superior Court to "larceny over $100", the Court's papers do not establish the amount of Nee's liability to Billing Systems. They are ambiguous and confusing because the notation states that restitution is to be made in the sum of $750 per month until the total amount is repaid. Nowhere in the papers or transcript is the total amount specified. In the trial of this action, Billing Systems did not introduce evidence from which the Court could compare the checks that were the subject of the indictments with the actual figures the checks were supposed to contain.

■■■ Billing Systems has not shown that its judgment in the sum of $96,524.14 is nondischargeable. The judgment was by default without a determination of the merits. More importantly, however, the Court is unable to discern the basis for the state court action or the underlying liability and I am unable to analyze whether the issues and elements in the prior civil action are the same as those required for proof of nondischargeability. However, the criminal conviction does conclusively establish the nondischargeability of the claims represented by the seven indictments. Since Billing Systems has failed to show the amount of Nee's larceny concerning the indictments, the Court is forced to accept the restitution ordered by the Superior Court, although ambiguous, as the amount of Nee's larceny, which totals $27,000. Accordingly, I find that the plaintiff has proved that Nee's larceny of Billing Systems funds totalled $59,968.12. The only remaining issue is whether Nee is entitled

to any credit for repayments of the funds he embezzled. Nee's claim that he repaid $6000 to Billing Systems by deductions from his salary is incredible. Both principals of Billing Systems testified that no such repayment agreement existed. Nee's testimony that the deductions, which totalled $6000, were intended to repay a $3000 debt arising from one of his first thefts, makes this claim of repayment totally unconvincing. Nee's claim that he repaid $7100 on September 22, 1977 is also incredible. Billing Systems was not alerted to Nee's embezzlement scheme until September 1978. It is not logical that Nee would have repaid stolen funds prior to his scheme being discovered. I do believe, however, that Nee repaid Billing Systems $9,000 of the $10,000 misappropriated in connection with the real estate deposit. It is clear that Nee deceived Tourtillot and Haughey as to the required amount of the deposit, causing them to deliver to him a $10,000 check on December 8, 1976, which he altered to include his company as payee and cashed on December 8, 1976. Nee delivered two checks on December 8, 1976 totalling $9,000 to Billing Systems, which were clearly deposited in Billing Systems' account on December 9, 1976. Thus, since Nee immediately returned $9,000 to Billing Systems he is entitled to a credit of $9,000 against the misappropriated $10,000. Accordingly, I find that Billing Systems has proved that Nee's obligation to it arising out of embezzlement or larceny is in the amount of $50,968.12.

The plaintiff also objects to the debtor's discharge on the ground that debtor committed a false oath in this case because he listed his liability to Billing Systems on the default judgment as contingent and disputed in his bankruptcy schedules. The objection is unmeritorious. As mentioned previously a debtor is not barred from relitigating issues in a bankruptcy proceeding which were not actually litigated in prior state court proceeding. Here, the amount owed Billing Systems was never determined by the criminal division. Since the civil judgment was by default, the amount owed Billing Systems also was

not actually determined there either. The debtor listed the claim as disputed because of his contention that he repaid part of the debt to Billing Systems. This was a good faith assertion on Nee's part and this statement did not constitute a false oath.

The debt owed by the debtor to Billing Systems, Inc. is declared nondischargeable pursuant to 11 U.S.C. § 523(a)(4) in the sum of $50,968.12. Judgment shall enter for the plaintiff in this adversary proceeding in the sum of $50,968.12.