In re Irwin KWIAT, Debtor.

Patrick A. DOUCETTE, Plaintiff,

v.

Irwin KWIAT, Defendant.

Bankruptcy No. 85–00844–HL.
Adv. No. 85–420.

United States Bankruptcy Court,
D. Massachusetts.

June 30, 1986.

David M. Nickless, Nickless & Phillips, Fitchburg, Mass., for plaintiff.

Philip D. Epstein, Marblehead, Mass., for defendant/debtor.

## MEMORANDUM ON MOTION FOR SUMMARY JUDGMENT

HAROLD LAVIEN, Chief Judge.

Before the Court is a Motion for Summary Judgment commenced by the plaintiff, Patrick A. Doucette, in an adversary proceeding brought against the defendant/debtor, Irwin Kwiat. The complaint alleges that certain debts of the defendant's, owing to the plaintiff pursuant to a judgment from the state court are non-dischargeable under 11 U.S.C. § 523(a)(4) [1] and (a)(6). The defendant denies the allegations made by the plaintiff in his complaint and counterclaims against the plaintiff, alleging abuse of process. Plaintiff moves the Court to grant summary judgment in his favor on the matters alleged in his complaint and to dismiss the counterclaim brought by the defendant. Defendant objects to this motion.

The defendant filed an individual bankruptcy under Chapter 7, 11 U.S.C. § 301 of the Bankruptcy Code, on July 30, 1985. He listed on his schedules of obligations a debt owing to the plaintiff. This debt stems from a judgment from the Superior Court, Middlesex County, and appealed to and affirmed by the Supreme Judicial Court in *Doucette v. Kwiat,* 392 Mass. 915, 467 N.E.2d 1374 (1984).

The facts are as determined by the Supreme Judicial Court in its opinion *Doucette v. Kwiat, supra.* The defendant was plaintiff's attorney in a personal injury action commenced on his behalf in January of 1976. These services were provided on a contingent fee arrangement under which the defendant was to recieve thirty-three and one-third (33⅓%) percent of any recovery. In December of 1979, a structured settlement was reached in the action providing for an immediate payment of $30,-000 in cash, a monthly payment of $1,500 for life, and payment of $150,000 in attorney's fees. At the time of the settlement, there was an outstanding lien by the Veterans Administration of $3,660 and for welfare payments of $45,000. The defendant settled both of these liens for $7,000.00, which he paid from the $30,000 "up front" money. He took a fee of one-third of the remaining portion of the "up front" money, after the liens and certain expenses were paid, as a fee for negotiating the lien settle-

---

**1.** Section 523(a)(4) and (a)(6) indicate as exceptions to discharge any debt

    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

    (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

ments. Doucette brought suit against Kwiat, claiming that the defendant had violated G.L. c. 221 § 51 and G.L. c. 93A § 2 by allocating himself a fee for the lien settlements. Judge Travers of the Superior Court, Middlesex County, tried the case and found the defendant liable under G.L. c. 221 § 51 in the amount of $6,866 with interest at five times the lawful rate running from the date the defendant knew of the plaintiff's demand. In addition, he found that the defendant had willfully and knowingly violated G.L. c. 93A, § 2, and awarded $6,866 plus the legal rate of interest. He also granted attorney's fees and cost under G.L. c. 93A, amounting to $8,517.49. This decision was appealed and affirmed by the Supreme Judicial Court.

Also before Judge Travers was a counterclaim brought by the defendant in the same case, alleging that Count I of the plaintiff's action which complained that the defendant had allotted himself too great a fee, constituted an abuse of process. Judge Travers denied the motion, holding that the Count was neither frivolous nor brought in bad faith. The defendant, again, brings this counterclaim in the present case. He claims that he has never had an evidentiary hearing on the matter and, therefore, he is not barred by res judicata from bringing the matter before this Court. Summary judgment is granted pursuant to Fed.R.Civ.P. 56 only when there are no questions of material fact. All facts are to be viewed in a light most favorable to the non-moving party, *Hahn v. Sargent,* 523 F.2d 461 (1st Cir.1975); *Arsenault v. Allegheny Airlines,* 485 F.Supp. 1373 (D.Mass.1980). However, there are limits to the preference the Court shows the non-moving party. As stated by the Court in *Mangano v. Delaval Separator Co.,* 309 F.2d 389, 393 (1st Cir.1962):

> While we believe that the plaintiff is entitled to all favorable inferences, he is not entitled to build a case on the gossamer threads of whimsey, speculation and conjecture.

The initial question before the Court in determining the plaintiff's Motion for Summary Judgment is whether the state court findings are relevant and sufficient to collaterally estop any defense the defendant may have to the non-dischargeability of his debt. The Supreme Court in *Brown v. Felson,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) found that a state court judgment against a defendant who, later, declared bankruptcy, was not res judicata in a bankruptcy dischargeability action commenced under 11 U.S.C. § 523. The bankruptcy court is to conduct its own analysis of the case. The Court left open the question of the application of collateral estoppel in such circumstances. *Brown v. Felson,* 442 at 139 n. 10, 99 S.Ct. at 2213 n. 10. Lower courts have since applied collateral estoppel to state court judgments in dischargeability actions, so long as the state court's findings addressed each aspect of the bankruptcy cause of action. *Commonwealth of Massachusetts v. Hale,* 618 F.2d 143 (1st Cir.1980); *In re Nee,* 50 B.R. 268 (Bankr.Mass.1985); *In re Longo,* 37 B.R. 900 (Bankr.Mass.1984). In order to grant summary judgment on the basis of the collateral estoppel effect of the state court judgment, this Court must find that:

1. the issues are the same in the dischargeability and the state court action;

2. the issues were litigated in the state court action;

3. the issues were decided and addressed in a valid and final judgment from the state court;

4. the determination was essential to the final judgment. *In re Suter,* 59 B.R. 944, 945 (Bankr.N.D.Ill.1986). For the reasons explained below, the Court finds that the state court decision in *Doucette v. Kwiat,* 392 Mass. 915, 467 N.E.2d 1374 (1984) addresses each aspect of proof required under 11 U.S.C. § 523(a)(4) and, therefore, grants the plaintiff's Motion for Summary Judgment on his claims and defendant's counterclaim.

First, plaintiff alleges and defendant denies that the Supreme Judicial Court found that the defendant had deprived the plaintiff the use of the funds in question while holding them in a fiduciary capacity. The term "fiduciary" as used within 11

U.S.C. § 523(a)(4) has a much narrower meaning then in its generally accepted use. In order for a fiduciary relationship to exist under 11 U.S.C. § 523(a)(4), there must either be an express or technical trust. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Cairone*, 12 B.R. 60 (Bankr.D.R.I.1981); *In re Schultz*, 46 B.R. 880 (Bankr.Nev.1985). The trust relationship must exist prior to the defalcation and not arise as a result of it. An express trust has (1) a declaration of trust, (2) a clearly defined trust res, (3) and an intent to create a trust relationship. *In re Cairone, supra.* A technical express trust may exist by statute. In *In re Janikowski*, 14 B.C.D. 521, 60 B.R. 784 (Bankr. N.D.Ill.1986) the court specifically found an attorney to hold a fiduciary relationship under 11 U.S.C. § 523(a)(4), as established by disciplinary rules adopted by the state's highest court. Clearly, an attorney holds a fiduciary capacity to his client, *see, Collier*, 15th ed. § 523.14, and cases cited therein, and Disciplinary Rule 9–102 adopted as part of Rule 3.07 by the Supreme Judicial Court.[2]

■ The wrong committed by Kwiat in his fiduciary capacity was a defalcation. In *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 512 (2d Cir.1937). Judge Hand defined defalcation:

> All we decide is that when a fiduciary takes money upon a conditional authority which may be revoked and knows at the time it may, he is guilty of a 'defalcation', though it may not be a 'fraud', or an embezzlement, or perhaps not even a 'misappropriation.'

The state trial judge found and the Supreme Judicial Court affirmed, *Doucette v. Kwiat*, 392 Mass. at 917, 467 N.E.2d 1374, that when Doucette signed the settlement agreement, his understanding from discussions with Kwiat was that *all* attor-

ney's fees were being paid by the insurance company under the arrangement outlined in the settlement agreement. Therefore, Kwiat breached his agreement when he took, without the client's permission, an additional fee of $6,866.00 for obtaining the discharge of liens, a normal part of the wrap and settlement of the case. This finding of fact by the state courts is sufficient to hold the judgment from the state court non-dischargeable under 11 U.S.C. § 523(a)(4).

The plaintiff is also asking for summary judgment on his claim under 11 U.S.C. § 523(a)(6). The Court does not reach this issue as it has already determined summary judgment on § 523(a)(4). In discussing the plaintiff's motion as it relates to this section, the Court notes, however, that the defendant's liability under § 523(a)(4), namely, his abuse of his fiduciary responsibilities is further buttressed by this portion of the plaintiff's motion. A debt is non-dischargeable under 11 U.S.C. § 523(a)(6) if the debtor's action caused "willful and malicious injury to another entity." The defendant must be found to have intended and understood his actions. As stated in *Collier's* 15th ed. at § 523.16:

> Thus the conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of the exception.

In this regard, it is important to note that the Supreme Judicial Court made a point of stating in *Doucette v. Kwiat*, at 917, 467 N.E.2d 1374:

> In the normal course, in the absence of a special agreement on the point, discharge of unchallenged liens and other such claims against a tort claim is part of the services an attorney would perform in return for his contingent fee. A client would reasonably expect that result if

---

**2.** All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds shall be deposited therein except as follows: Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client in which event the disputed portion shall not be withdrawn until the dispute is resolved. D.R. 9–102 as incorporated into Rule 3:07 of the Supreme Judicial Court.

nothing were said on the subject. In such circumstances, an attorney's claim of a fee for settling liens does not present 'an honest controversy between the parties' (see *Zuckernik v. Jordan Marsh Co.*, 290 Mass. 151, 156, 194 N.E. 892 [1935]).

The Court is not unmindful of cases in this jurisdiction in which the Court denied a Motion for Summary Judgment in an 11 U.S.C. § 523(a)(6) claim based on a state court judgment under G.L. c. 93A § 9. The First Circuit in *Commonwealth of Massachusetts v. Hale*, 618 F.2d 143 (1st Cir. 1980) affirmed the bankruptcy court's decision, denying the plaintiff, Commonwealth's, Motion for Summary Judgment under 11 U.S.C. § 523(a)(6) based on a default judgment on a G.L. c. § 93A claim. The Court noted that the state court judgment was based on the defendant's default and there were no findings of fact from which to glean the basis for the decision. Consequently, it was possible that the findings in the state court would not have qualified the plaintiff for summary judgment. In *In re Longo*, 37 B.R. 900 (Bankr. D.Mass.1984) a trial was held by the bankruptcy court. The plaintiff called no witnesses and rested his case after introducing the state court judgment which indicated that there had been a judgment on the pleadings immediately after trial, the Court's findings, docket, and monetary judgment. The defendant introduced an estimate given to him by the plaintiff for work to be done, and then rested. No briefs were filed. The bankruptcy court found that notwithstanding the state court findings, questions of fact remained open as to whether the defendant's actions were willful and malicious. While summary judgment is being allowed under § 523(a)(4) and not (6), it should be noted that in this case, the Supreme Judicial Court made two relevant findings missing in the cited cases:

1. Before the plaintiff signed the settlement agreement, he had discussed attorney's fees with the defendant and understood that they were to be completely satisfied by the insurance company under the terms of the settlement.

2. The Supreme Judicial Court unequivocally stated in the above quote that without a special agreement to the effect, a charge by an attorney for the settlement of liens does not represent an honest dispute. As the facts are explained in the Supreme Judicial Court's opinion, this Court has little doubt that the defendant knew his fee for settling the liens was contrary to the terms of his arrangement with the plaintiff and, therefore, were a breach of his fiduciary duty as attorney under Disciplinary Rule 9–102, adopted as part of Rule 3.07 of the Supreme Judicial Court.

■ The next issue for the Court to address is the plaintiff's Motion for Summary Judgment on defendant's counterclaim. The defendant counterclaims against the plaintiff, alleging an abuse of process by the plaintiff (not the debtor) in prosecuting Count I of his state court complaint because the plaintiff knew it was false when he brought it and he, ultimately, lost this action. As the Supreme Judicial Court stated:

The defendant argues that he should have been awarded counsel fees under G.L. c. 231, § 6F, inserted by St.1976, c. 233, § 1, because he was successful in his defense of Doucette's claim under count one of the amended complaint. That count challenged the overall fees collected by the defendant and the trial counsel, in part on the ground that they exceeded the amount properly collectible under the contingent fee agreement. The judge denied the defendant's motion because this count was not frivolous or brought in bad faith. Where Doucette prevailed on his G.L. c. 221, § 51, and G.L. c. 93A claims, the judge was hardly required as a matter of law to find that 'all or substantially all of [Doucette's] claims ... were wholly insubstantial, frivolous and not advanced in good faith.' G.L. c. 231, § 6F. In any event, any appeal from the denial of a motion for reasonable counsel fees, costs, and expenses must be made to a single justice of the Appeals Court. G.L. c. 231, § 6G. If there is some basis for saying that a losing party at the trial level has any rights under G.L. c. 231, § 6F, as to

claims on which he was successful, and if in some cases there should be available a method for consolidating an appeal on the merits with an appeal from the denial of a motion for attorney's fees, costs, and expenses under G.L. c. 231, § 6F, this case is not such a case.

If the Court were to adopt the line of reasoning positted by the defendant, he would also be liable for a form of malicious prosecution by resisting the plaintiff's claims under 11 U.S.C. § 523(a)(4) and (6). He has twice lost in the defense of these claims in state court and it is clear, on a careful reading of the state court opinion, *Doucette v. Kwiat*, 392 Mass. 915, 468 N.E.2d 263 (1984) that the state court judgment is non-dischargeable under 11 U.S.C. § 523(a)(4). However, the defendant's attempt to defend against the plaintiff's claims in this court, can no more be characterized as an act of bad faith than the plaintiff's initiation of Count I. The plaintiff is granted summary judgment as to the defendant's counterclaim which this Court finds to be without merit.

■ The final issue to be addressed is what portion of the state court judgment will be non-dischargeable. The state court awarded: the amount charged by Kwiat for settling the liens in the sum of $6,866.00; a further charge at the rate of five times interest as authorized by M.G.L. c. 221 § 51, amounting to $3,562.36 × 5 = $17,811.80, as authorized by M.G.L. c. 221 § 51; recovery under M.G.L. c. 93A § 2 in the sum of $6,866.00 together with interest in the amount of $3,562.36; legal fees and costs in the sum of $8,000.00 for legal fees through trial and $4,000.00 for legal fees for the appeal, and $517.49 for costs through trial, and $826.03 for costs for the appeal, making a total of $13,343.52. In determining what amount of the state court judgment will be non-dischargeable, this Court will follow the rationale as articulated in *In re Suter*, 59 B.R. 944 (Bankr. N.D.Ill.1984), allowing the plaintiff that portion of a district court judgment awarded for actual damages at the normal rate of interest plus attorney fees incurred in prosecuting the claim, and disallowing all multiple interest rates which had been allowed.

In *Suter*, the Court reasoned that the Code favored a policy of granting debtors a fresh start. The discharge sections are an exception to the underlying policy of the Bankruptcy Code and are intended to compensate a plaintiff only for his actual damages. In following this policy, a bankruptcy court should only exempt from discharge that portion of another court's judgment which compensates the plaintiff for his actual damages at the normal rate of interest, and the cost of the attorney fees incurred in the prosecution of his case. Although there may be an argument against exempting attorney fees from discharge, it is an actual damage incurred by the plaintiff from the defendant's actions. Following these guidelines, the Court finds $23,771.88 nondischargeable. This number is reached by allowing $6,866.00 for actual damages and $3,562.36 in interest, $12,000.00 for legal fees, $1,344.52 in costs.