In re Ellen SALAMONE, Debtor.

HOMEMAKERS, INC., Plaintiff,

v.

Ellen SALAMONE and Leo F. Doyle, Trustee, Defendants.

Bankruptcy No. 85–01922G.
Adv. No. 85–0836G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 23, 1987.

Jay C. Glickman, Lansdale, Pa., for plaintiff, Homemakers, Inc.

Jeffrey V. Matteo, Norristown, Pa., for debtor/defendant, Ellen Salamone.

Leo F. Doyle, Philadelphia, Pa., defendant/trustee.

## MEMORANDUM OPINION

BRUCE FOX, Bankruptcy Judge:

This adversary proceeding comes before me on remand from the district court. Plaintiff Homemakers, Inc. (Homemakers) commenced the action in the bankruptcy court requesting that the debtor's discharge be denied under 11 U.S.C. § 727 and that the court determine that the debtor's obligation to Homemakers be excepted from discharge pursuant to 11 U.S.C. § 523. On July 25, 1986, this court held that Homemakers failed to establish grounds for denial of the debtor's discharge but that the debtor's debt to Homemakers in the amount of $55,741.14 should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). *In re Salamone*, 62 B.R. 690 (Bankr.E.D.Pa.1986). After the debtor appealed, the district court reversed the bankruptcy court order excepting the debt from discharge. *In re Salamone*, 71 B.R. 69 (E.D.Pa. February 12, 1987). The district court also remanded the case for this court to further consider whether Homemakers had established grounds to except the debt from discharge under 11 U.S.C. §§ 523(a)(2)(A) or 523(a)(4).

After consideration of the record and for the reasons set forth below, I conclude that the debtor's obligation to Homemakers may not be excepted from discharge.

The facts underlying this dispute are detailed in the two prior opinions issued and need not be repeated here. Suffice it to say that Homemakers established at trial that it is a company which sells custom draperies, slipcovers and related goods to the public through commissioned salespersons, that it employed the debtor as a salesperson from 1981 through 1984 and that during her period of employment, the debtor willfully and intentionally converted customer leads and used them to create sales for herself. The bankruptcy court found the foregoing facts and the district court concluded that those findings were supported by the record.

The issue which was the basis of the district court reversal was whether Homemakers proved at trial that it suffered any

injury due to the debtor's conduct. The bankruptcy court found that Homemakers suffered damages in the amount of $55,-714.14. The court determined this figure by beginning with the price the debtor paid for the "raw goods" she purchased from various fabric houses on her own account and then made certain additional calculations based on Homemakers' ordinary price markup, its typical gross profit and adjustments to the gross profit for commission expenses. 62 B.R. at 690. In this determination, the court implicitly assumed that absent the debtor's wrongdoing, Homemakers would have made sales in amounts equivalent to the raw materials purchased by the debtor on her own account. The district court rejected that assumption, reasoning as following:

> The bankruptcy court ... considered the circumstantial evidence presented by Homemakers that [the debtor's] sales for Homemakers declined and that her personal purchases from fabric suppliers increased. Under other circumstances this evidence may be sufficient to infer that [the debtor] was taking Homemakers' sales. However, that evidence is insufficient in this case, where there is uncontradicted testimony by Homemakers' customers that [the debtor] only made sales to them when they had already decided not to purchase from Homemakers and that [the debtor] did not attempt to dissuade them from purchasing from Homemakers.

71 B.R. at 71. Thus, the district court held that Homemakers failed to prove at trial that it suffered any injury as a result of the debtor's conduct and, therefore, an exception to discharge under 11 U.S.C. § 523(a)(6) was not warranted.

Against this background, I now consider Homemakers' claims under section 523(a)(2)(A) and (a)(4).

■ It is well established that, in order to prevail under 11 U.S.C. § 523(a)(2)(A), a creditor must prove that: (1) the debtor made a materially false representation; (2) the representation was made with intent to deceive; (3) the creditor justifiably relied on the representation; and (4) *the creditor sustained proximate damage as a result of the representation.* In re McCall, 76 B.R. 490, 492 (Bankr.E.D.Pa.1987); In re Paolino, 75 B.R. 641, 646 (Bankr.E.D.Pa. 1987); In re Fitzgerald, 73 B.R. 923 (Bankr.E.D.Pa.1987); In re Woods, 66 B.R. 984 (Bankr.E.D.Pa.1986); In re Gelfand, 47 B.R. 876 (Bankr.E.D.Pa.1985).

The plain holding of the district court in this case was that Homemakers did not prove that it sustained any proximate damage as a result of the debtor's conduct. I am bound by that ruling on remand. 1B *Moore's Federal Practice* ¶ 0.404[1], at 117–119 (2d ed. 1984). It is therefore clear that Homemakers has not met the fourth element set forth above and cannot prevail under section 523(a)(2)(A).[1]

■ Nor is Homemakers entitled to relief under section 523(a)(4). That section provides for the nondischargeability of any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Collier explains that section 523(a)(4) creates an exception based on (1) fraud or defalcation while acting in a fiduciary capacity or (2) embezzlement or larceny while not acting in a fiduciary capacity. 3 *Collier on Bankruptcy* ¶ 523.14 (15th ed. 1987) ("*Collier*"). Accord, In re Kapnison, 65 B.R. 221 (Bankr.D.N.M.1986); In re Talcott, 29 B.R. 874 (Bankr.D.Kan.1983). Under the former ground, it is well established that the requirement that the debtor be acting in a fiduciary capacity refers to express trusts and not trusts *ex maleficio* which may be imposed due to the very wrongful act out of which the debt arose. In re Lane, 76 B.R. 1016, 1022 (Bankr.E.D. Pa.1987); In re Kapnison; In re Gould, 65 B.R. 87 (Bankr.N.D.N.Y.1986); In re Kwi-

**1.** I agree with my predecessor, Chief Judge Goldhaber, that the evidence which showed a sharp decline in sales generated by the debtor on behalf of plaintiff along with a substantial purchase of raw materials by the debtor reflect the possible diversion of sales from plaintiff to the debtor. However, the district court was quite clear in concluding that plaintiff's burden was not met by this evidence.

*at,* 62 B.R. 818 (Bankr.D.Mass.1986); 3 *Collier* ¶ 523.14[1], at 523–93 to 523–96. As for the alternate bases for nondischargeability under section 523(a)(4), Collier describes them as follows:

Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful, or with [the] consent of the owner, while in larceny the felonious intent must have existed at the time of the taking.

3 *Collier* ¶ 523.24[2], at 523–98; *accord, In re Gregorowicz,* 27 B.R. 193 (Bankr.M.D. Pa.1982). One court has observed that the initially lawful possession in an embezzlement ordinarily arises by reason of some office or employment or position of trust and that the type of fraudulent appropriation referred to in section 523(a)(2)(A) must involve fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud. *In re Epperson,* 45 B.R. 708, 711 (Bankr.E.D.Tenn. 1985). *See also United States Life Title Insurance Co. v. Dohm,* 19 B.R. 134 (N.D. Ill.1982); *In re Beasley,* 62 B.R. 653 (Bankr.W.D.Mo.1986); *In re Freeman,* 30 B.R. 704 (Bankr.W.D.La.1983).

■ Homemakers does not assert that the debtor was in a fiduciary relationship with it. Rather, it asserts that the debtor's use of its customer leads was larcenous. Homemakers' Brief at 10. There is no dispute, however, that the debtor came into possession of the customer leads lawfully with Homemakers' consent. I will therefore treat Homemakers as asserting that the debt is nondischargeable because it arises from an embezzlement.

■ At least one court has recognized that the elements of embezzlement are closely related to the requirement for nondischargeability under section 523(a)(6) for willful and malicious injury to the creditor or property of the debtor. *See In re Beasley,* 62 B.R. at 655. Yet, unlike subsections (a)(2) and (a)(6) of section 523, the judicial formulations of the elements which must be proven by a creditor under subsection (a)(4) make no express reference to "injury" or "proximate damages." Thus, in applying the black letter test for embezzlement (*i.e.,* misappropriation of property with fraudulent intent), it might appear at first blush that Homemakers should prevail. In my view, however, a requirement that the creditor prove the damages resulting from the embezzlement is implicit in the embezzlement exception to discharge.

I reach this conclusion for several reasons. First, most cases of embezzlement involve the misappropriation of cash or tangible property. In such cases, the injury to the creditor is rather obvious. Indeed, it is difficult to imagine a case in which a creditor seeks repayment for an embezzlement without establishing the extent of its damages. Second, the result is dictated by common sense. The determination having been made in this case that the creditor has not proven that it suffered any injury, a determination of nondischargeability would be both meaningless and inappropriate. Third, I see no reason, from a policy point of view, in the case at bench, that the result under section 523(a)(4) should differ from that under section 523(a)(6).

Additionally, I find some support for my conclusion in *In re Nee,* 50 B.R. 268 (Bankr.D.Mass.1985). In *Nee,* the debtor pleaded guilty to criminal charges arising from his embezzlement of funds prior to his bankruptcy filing. The state court never made a determination of the amount of money the debtor had embezzled but did issue a restitution order totalling $27,000.00. The creditor introduced no other evidence in the bankruptcy proceeding quantifying the amount of money embezzled in connection with the debtor's conduct which gave rise to the criminal charges. In the context of concluding that the issues decided in the state criminal proceeding were to be given preclusive effect, the court stated that if the criminal proceeding did not establish the amount of the embezzlement, "in a subsequent nondischargeability [proceeding], *the creditor must prove and liquidate the amount of the obligation in the nondischargeability litigation.*" 50 B.R. at 272. In the absence of any other evidence, the court accepted the criminal restitution amount as repre-

senting the amount of the nondischargeable debt.[2] It is clear from the court's reasoning that had there been no quantification at all by the state court of the amount of money embezzled, the bankruptcy court would not have found any sum to be nondischargeable. Similarly, here, where Homemakers has not established that it suffered any damage as a result of the "embezzlement" of its customer leads, it would be inappropriate to determine any obligation of the debtor to Homemakers to be nondischargeable.

An order consistent with this memorandum opinion will be entered.

### ORDER

AND NOW, this 23rd day of September, 1987, upon consideration it is ORDERED that judgment shall be entered in favor of defendants and against plaintiff concerning plaintiff's complaint to except its claim from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(4).

---

**2.** In *Nee,* the creditor did submit evidence of the amount of money that the debtor had embezzled in transactions unrelated to those giving rise to the criminal charges. In addition, the court gave the debtor credit for certain sums which he repaid. Based on all of the evidence, the court found that a total sum slightly in excess of $50,000.00 was nondischargeable pursuant to 11 U.S.C. § 523(a)(4).