**In re Eric R. PITT, Barbara G. Pitt, Debtors.**

**LAWYERS TITLE INSURANCE CORPORATION, Plaintiff,**

v.

**Eric R. PITT, and Barbara G. Pitt, Defendants.**

**Bankruptcy No. 90–20529–B. APN 90–2121–B.**

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

Nov. 29, 1990.

---

James R. Sheeran, Portsmouth, Va., for debtors.

C. Jay Robbins, IV, Chesapeake, Va., for plaintiff.

## OPINION AND ORDER

HAL J. BONNEY, JR., Bankruptcy Judge.

This is a short opinion with long consequences. It may considerably affect the relationship among developers, lenders, title insurance companies, general contractors and subcontractors for time to come.

Here is a lesson that the law cannot become subordinated to convenience.

In the construction industry and, unfortunately, in the realm of bankruptcy we are familiar with the system by which the general contractor affirms that he has completed a certain portion of the work, that all subcontractors and suppliers have been paid or that they waive their rights pertaining thereto. Such an affidavit is presented to the title insurance company and to the lender and a draw upon the loan is made. On Friday afternoon everyone is happy.

This case unearths a convenient approach to the system, but, alas, one incumbent with problems. It appears that for convenience sake, to save the contractor from making the rounds of subcontractors and suppliers prior to every draw, the "Owner's and Contractor's Affidavit (Construction In Progress)" form of Lawyers Title Insurance Corporation is executed *and* notarized in advance at the closing of the loan with the date later filled in when presented. The contractor usually verifies by telephone that the affidavit is valid.

Having heard similar cases before and knowing that such affidavits have been actually circulated, the Court inquired of a witness, Ernest C. Consolvo, Esquire, a knowledgeable real estate attorney with considerable experience, if the practice had changed. He acknowledged it had changed in recent years for the convenience of which we speak. Of course, this is conceded by the plaintiff here, Lawyers Title Insurance Corporation.

The debtors and defendants in this dischargeability action, Eric R. and Barbara G. Pitt [Pitts], were principals and officers in a business known as E.R. Pitt Construction Company, Inc., and in order to secure funds from lenders had to purchase title insurance, in this case from Lawyers Title Insurance Corporation. It is stipulated among the parties that the affidavits [see, by way of example, the pertinent part of Exhibit 2] were executed in blank *the date each loan was originally closed.*

For the seven lots involved, Lawyers Title Insurance Corporation seeks to

save from discharge in the debtors' bankruptcy a total of $151,303.89.

To have a debt declared non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(A), a creditor/plaintiff must show misrepresentation alleged by a preponderance of the evidence, prevailing upon the elements of

(1) having made the representation,

(2) knowing at the time it was false,

(3) making it with the intent and purpose of deceiving,

(4) with the creditor relying thereon, *and*

(5) the creditor sustaining loss and damage as a result thereof. *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540 (W.D.Va. 1967)

■ Here the debtors represented payment of suppliers and subcontractors and the creditor sustained loss; however, since the representation was made up front at the time of the loan, it was not then untrue. The facts must show intent at the time and not later. *In re Maxwell*, 75–338–NN (E.D. Va., Clarke, J., 1976). Clearly, neither knowledge nor intent to deceive was originally present at the time the affidavit was made.

It is argued by the plaintiff that these elements were later present when the Pitts tendered an affidavit. Ah, but the plaintiff cannot in truth say it relied upon the latter day event since it knew the affidavit was a lie. Indeed, it was a party to the deed, the form is its own.

Further, the testimony is uncontradicted that Mrs. Pitt had told Lawyers Title along the way the company was having difficulty paying the jobs.

Too, Paula Kaplinger of Lawyers Title testified, "LTIC was aware the dates (on the affidavits) were filled in after the closing signing."

To allow this system to prevail makes of affidavits a known lie and defeats in the Commonwealth of Virginia the sanctity of affidavits. They would come to mean nothing.

It is so sacred that affidavits may only be given before designated officials. Section 49–4, Code of Virginia (1950).

It is a statement reduced to writing, the truth of which is sworn to before someone authorized to administer an oath. 1A Michie's Jurisprudence "Affidavits," Section 2 citing *Farm Bureau Mut. Ins. Co. v. Hammer*, 177 F.2d 793 (4th Cir.1949), *cert. denied*, 339 U.S. 914, 70 S.Ct. 575, 94 L.Ed. 1339 (1950).

What we have here is a system of acknowledged convenience known to all. From the very onset, at the loan closing, "the paper work is done," the affidavits are signed and sworn to with the dates to be filled in as draws are made. Oh, the contractor is supposed to tell Lawyers Title of the current status, but, in truth, it is not now under oath.

A plaintiff might prevail against the debtors in other forums, but it must be remembered it is the *bankruptcy* standard which must be applied against the Pitts here. The clear involvement of Lawyers Title in "the convenient system" precludes defeating a discharge. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Royal Indemnity Co. v. Cooper*, 26 F.2d 585 (4th Cir.1928); *Roberts v. Ford*, 169 F.2d 151 (4th Cir.1948); *Davison–Paxson Co. v. Caldwell*, 115 F.2d 189 (5th Cir.1941).

While fraud, too, was alleged, no evidence of such prevails. That means guilty scienter and it is nowhere present.

The indebtedness of Eric R. and Barbara G. Pitt to Lawyers Title Insurance Corporation is discharged in bankruptcy.

IT IS SO ORDERED.

## EPILOGUE

Lawyers Title has lost here, is certainly no villain and has learned a great deal from the present case. Indeed, it is much wiser.

As one of America's foremost title insurers, it has long been active in this market. In Tidewater Virginia, development has been at a stupendous rate with hundreds of projects, hundreds of contractors, thousands of suppliers and subs or workmen, scores of lenders and but a few title insurers.

The paper work has been more than enormous. Remember, thousands lined up behind the contractors to be paid. All yearned for a shorter system. Lawyers Title went from a long form affidavit to this shorter one and turned its head when affidavits were signed and sworn to in advance.

Now, with the fall of many developers and contractors, Lawyers Title has had to pay large losses. Even before this case came to trial, it ceased giving affirmative mechanic's lien coverage altogether in the cities of Chesapeake and Virginia Beach.

I believe Lawyers Title will tell you in hindsight it, and others, foolishly agreed to provide coverage in areas beyond the fundamental concept of title insurance.

This is a small dischargeability case. Its implications, however, along with non-bankruptcy losses, will alter title insurance as we have recently known it. Here Lawyers Title is the whipping boy, but we know there are many others out there who are more to blame.