**LAWYERS TITLE INSURANCE CORPORATION, Appellant,**

v.

**Eric R. PITT, and Barbara G. Pitt, Appellees.**

**Civ. A. No. 90–1937–N.**

United States District Court, E.D. Virginia, Norfolk Division.

March 20, 1991.

Order Revoking Part of Decision on Reconsideration April 17, 1991.

Clement Jay Robbins, Outland, Gray, O'Keefe & Hubbard, Chesapeake, VA, for Lawyers Title Ins. Corp.

James Robert Sheeran, Marcus, Santoro & Kozak, Portsmouth, VA, for Eric R. and Barbara G. Pitt.

## ORDER

MacKENZIE, District Judge.

This appeal comes before the Court for review of the bankruptcy court's order dismissing Lawyers Title Insurance Corporation's action to except certain debts of Eric and Barbara Pitts from discharge, pursuant to 11 U.S.C. § 523(a)(2)(A), because of the Pitts' alleged use of false affidavits to obtain draws on their construction loans.

In the core proceeding below, the bankruptcy court, per Bonney, J., held that Lawyers Title Insurance Corporation had failed to prove that the affidavits were false at the time they were executed, and, therefore, had not satisfied an essential element under § 523(a)(2)(A) 121 B.R. 493 (Bkrtcy.E.D.Va.1990). The court premised its holding on appellant's participation in a "system of convenience" whereby undated,

form affidavits were executed before construction began and before any part of the loan was paid over to the Pitts, but then dated and notarized on Mrs. Pitts' request at the time individual draws were made on the loan.

While mindful of the clear error deference which governs our review of the lower court's findings in a proceeding involving dischargeability of debt, *see* Bankruptcy Rule 8013; *In re Allen*, 65 B.R. 752 (E.D.Va.1986), we nevertheless REVERSE the court's finding that the Pitts' use of the affidavits did not amount to a false representation for purposes of § 523(a)(2)(A), and REMAND for further proceedings consistent with this Order.

## I. *Factual Background*

Lawyers Title Insurance Title Corporation (Lawyers Title) provided title insurance to E.R. Pitt Construction Company (the Pitts), of which Eric and Barbara Pitts are principals, for purchases of lots and home construction. Seven loans, six of which were provided between January and June, 1989, and one loan made to the Pitts in January, 1988, are the subject of this action.[1] For each of the loans, Lawyers Title required the Pitts to execute an indemnity bond and a number of mechanic's lien waiver forms, entitled Form 91–110 OWNER'S and CONTRACTOR'S AFFIDAVIT (Construction in Progress) (hereinafter "affidavits"). These affidavits provided in pertinent part that there were "... no mechanics' or materialmen's liens against said property and no claims outstanding which would entitle the holder thereof to claim a lien ... General Contractor hereby waives and releases his right to file a mechanic's lien or materialmen's lien against said property ..." *See* Complaint, Exhibit B.

---

**1.** The loans are denoted by numbers corresponding to the lots purchased with the loans. The lot numbers and number of mechanics' liens filed against each are provided below:

| Lot Number | Liens |
| --- | --- |
| Lot 22 | 5 |
| Lot 57 | 3 |
| Lot 116 | 10 |
| Lot 120 | 5 |
| Lot 128 | 7 |
| Lot 145 | 0 |
| Lot 262 | 4 |

*See* Opening Brief of Appellees at 18–25.

The affidavits were signed at the time arrangements for construction financing were made, but left undated. To make a draw on the loans, Mrs. Pitts would telephone the Pitts' attorney, Carl Markowitz, and inform him that all mechanics and materialmen had been paid to date. Attorney Markowitz, also a notary public, would then sign and notarize the affidavit and affix the date of the draw as the date of the affidavit.

It is uncontroverted that this system of using pre-signed affidavits was designed to accommodate the Pitts by reducing the time necessary for them to spend in their attorney's office.

The practice of using pre-signed, undated affidavits is common in the construction financing industry as long as they are truthful as of the date they are used. Agents for Lawyers Title testified that such affidavits are used in approximately 20% of all real estate financing; the Pitts and Lawyers Title had relied on it in approximately 40 transactions prior to this action.

In the winter of 1989, the Pitts were experiencing economic reversals, and they fell behind in their payments to subcontractors and materialmen. Their financial problems came to a head when Roller Plumbing Company filed a mechanic's lien against the Pitts in early 1989. As a result, an agent of Lawyers Title met with the Pitts on March 3, 1989 to emphasize the importance of the representations in the affidavits as truthful, and to warn the Pitts of the penalties for providing false affidavits.

Subsequent to their March 3, 1989 meeting with Lawyers Title, the Pitts closed five of the seven loans now at issue, and made approximately 50 draws on the loans by using the affidavits in the manner described above.

However, the Pitts applied only a small fraction of the draws made on the loans toward actual payment of the unpaid subcontractors and materialmen. Many were left unpaid. Subsequently, subcontractors and materialmen filed approximately 35 liens against the Pitts' properties. Lawyers Title has defended, and continues to defend, these suits and has allegedly incurred losses to date in excess of $151,000, including attorneys' fees.

### Procedural History

Lawyers Title filed an objection in the bankruptcy court, pursuant to 11 U.S.C. § 523(a)(2)(A)[2], to save from discharge the debts arising out of the suits filed against the Pitts and paid by Lawyers Title. The matter came on for trial in September, 1990, and at the close of Lawyers Title's case-in-chief, the bankruptcy court dismissed the action and ruled the Pitts' debts, including indemnity obligations to Lawyers Title, dischargeable in bankruptcy.

The court below grounded its holding on its finding that the affidavits used by the Pitts were *not* false at the time they were made, *i.e.*, at the original closing when no funds were then transferred, and, therefore, the first element of § 523(a)(2)(A) had not been satisfied. *See In re Pitt*, 121 B.R. 493, 495 (Bkrtcy.E.D.Va.1990). Consequently, the court found neither knowledge nor intent to deceive on the part of the Pitts. *Id.* Finally, the court barred Lawyers Title's recovery based on their participation in a "system of convenience" which "makes of affidavits a known lie and de-

---

**2.** Section 523(a)(2)(A) of Title 11 essentially incorporates the elements of common law fraud; a creditor who seeks to bar a discharge of debts must prove by a preponderance of the evidence each of the following elements:
(1) the debtor made a representation;
(2) that at the time he knew it was false;
(3) that he made it with the intention and purpose of deceiving the creditor;
(4) that the creditor relied on such representation; and,

(5) that the creditor sustained damage as the proximate result of the representation having been made. *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967).
Denial of discharge, as compared with a decree of nondischargeability, is designed to penalize the misconduct of a debtor. *See* 4 Collier on Bankruptcy, para. 727.01, p. 727–6 (1990).

feats in the Commonwealth of Virginia the sanctity of affidavits." *Id.* at 495.

Lawyers Title filed its notice of appeal on December 4, 1990.

## DISCUSSION

### I. *The Elements of § 523(a)(2)(A)*

#### A. False Representation

The court below relied almost exclusively on the fact that at the time the Pitts arranged the future financing and signed the affidavits, which were left with their attorney, the contents of those affidavits were true and accurate: that is, no mechanics' liens were outstanding on the properties. The court cited an unpublished opinion from this Court[3] to support its conclusion that since the affidavits had not been false at the start, the scienter element had been absent as well.

We have found no support in the *In re Maxwell* Order for this proposition. Instead, we see that Order as a discussion of the bankruptcy court's failure to make findings as to whether the creditor had *relied* on a representation by debtor that loans were to be used for a specific purpose when the loans were later used for a different purpose. *See In re Maxwell* at 4.

■ We are in accord with the lower court's conclusion that the Pitts' affidavits were true *at the time the arrangements for financing were finalized* insofar as there were no mechanics' or materialmen's liens then outstanding against the property. But, the affidavits were "true" only because no material had been supplied and no construction work had been performed on the properties. Thus, no materialmen and no subcontractors had worked on the

properties to create even the possibility of a lien.

We believe that the lower court's decision to focus on *when* the affidavits were executed, as opposed to when they were delivered, belies the very purpose for which the affidavits were in fact used: *i.e.,* to enable the Pitts to make draws on the loans. That the affidavits were for use *during the construction process* is evidenced by the title on the form affidavit, OWNER'S AND CONTRACTOR'S AFFIDAVIT (CONSTRUCTION IN PROGRESS), and by the representations therein.[4] The purpose of the affidavits was to ensure Lawyers Title that all prospective lien-holders were paid to that date as a prerequisite to its insuring the Pitts' title for lenders.[5] Equally clear is the fact that the Pitts triggered the draws on their loans by using these affidavits, when their subcontractors and materialmen had not been paid, and such affidavits were, in fact, totally false. Counsel for the Pitts conceded to this Court that the draws on the loan could not have occurred but for the affidavits.

#### B. Intent or Purpose to Deceive

■ The lower court also concluded that since the affidavits were not false at the time they were executed, the Pitts could not have possessed the requisite intent to deceive as required by the statute. We disagree. It is plain that the Pitts used the affidavits time and time again for successive draws, despite the fact that materialmen and subcontractors were largely unpaid. We interpret their use of the affidavits as a willful misrepresentation designed to procure draws on their loans. An overt misrepresentation is not a necessary predicate for satisfying the scienter element under § 523(a)(2)(A) when it is clear that the

---

3. *See e.g. In re Maxwell* No. 75–338–NN (E.D.Va. April 30, 1976) at 4.

4. The affidavit provides three assurances to the title insurer: (1) that all of the persons who have furnished labor, services, or materials have been paid; (2) that there are no mechanic's liens against said property; and, (3) that there are no claims outstanding which would entitle the holder thereof to claim a lien. *See* Complaint, Exhibit B.

5. The purpose of the affidavit is set forth in the third full paragraph of the affidavit:

That this affidavit is made for the purpose of inducing the making of a loan on said property and LAWYERS TITLE INSURANCE CORPORATION to issue its policy or policies insuring the title to said property without exception to, or providing insurance against, claims of mechanics, materialmen and laborers ...
*See* Complaint, Exhibit B.

party had no intention of performing. *See* 3 Collier on Bankruptcy, para. 523.08, p. 523–51, 523–52 (1990).

## C. Reliance

Another essential element that the creditor must prove to defeat discharge of debts is that of reliance. *See Sweet v. Ritter Finance, supra* note 2. Whether that reliance must also be *reasonable* has not been resolved by the Fourth Circuit, but at least four circuits have read a reasonableness requirement into § 523(a)(2)(A).[6]

■ Assuming, without deciding, that the more significant showing of reasonable reliance is required, we find that Lawyers Title has established clearly, through the testimony of its agents at the proceeding below, that it relied on the affidavits and representations made by Mrs. Pitts, together with the level of trust that exists between subcontractors, contractors, and title insurers in the industry. The Pitts have argued strenuously that since Lawyers Title allegedly knew that normally 20% to 50% of affidavits are untrue at the time of the draw, *i.e.*, that subcontractors are often not paid in full before the subsequent draw, its reliance on the affidavits was either absent or unreasonable. We decline to adopt the Pitts' rationale. It would amount to a condonation of the Pitts' use of false affidavits because such practice has allegedly become commonplace in the industry. Moreover, this argument ignores the reality of this case—the Pitts' receipt of money and continued title insurance by knowingly making a false statement in order to induce Lawyers Title to rely on it. *See In re Dallam,* 850 F.2d 446 (8th Cir. 1988).

## D. Damages

The proceeding below did not fully develop the exact number of mechanics' and materialmen's liens filed against the Pitts and paid by Lawyers Title. Therefore, it remains for the lower court on remand to establish the amount of the liens paid by Lawyers Title, and the damages, including attorneys' fees, proximately resulting therefrom. *See Sweet v. Ritter Finance supra* at note 2.

## II. *The System of Convenience*

The hearing below established that pre-signed affidavits are used as a matter of course in at least 20% of all real estate transactions of this nature. The bankruptcy court, however, voiced concern that such a "system of convenience" was problematic and ultimately unacceptable because of its effect on the viability of affidavits in the Commonwealth of Virginia. The court cited three cases[7] to support its holding, all of which we deem inapposite.

■ As a practical matter, the courts should not be eager to intrude into the business practices of lending institutions or their title insurers and substitute their judgment for that of the business community. *Household Fin. Corp. v. Howard,* 73 B.R. 694, 706 (Bkrtcy.N.D.Ind.1987); *In re Allen, supra* at 763 (recognizing the importance of the business-practices-and-industry-custom inquiry). We view Lawyers Title's consent to the use of the pre-signed affidavits as consistent with industry standards and with their own practices. For the builder to locate a contractor to sign an affidavit before each individual draw is made, when that contractor has responsibilities at several job sites, poses obvious logistical problems. The system breaks down, as here, only when builders too lightly regard the force of the affidavit and

---

**6.** *In re Mullet,* 817 F.2d 677 (10th Cir.1987); *In re Kimzey,* 761 F.2d 421 (7th Cir.1985); *In re Hunter,* 780 F.2d 1577 (11th Cir.1986) (reciting that reliance must be reasonable but failing to reach the merits of the inquiry); *In re Phillips,* 804 F.2d 930 (6th Cir.1986).

But see *In re Ophaug,* 827 F.2d 340 (8th Cir. 1987) (holding that reliance need not be reasonable based on statutory construction of § 523(a)(2)(A)).

**7.** *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Royal Indemnity Co. v. Cooper,* 26 F.2d 585 (4th Cir.1928); *Roberts v. Ford,* 169 F.2d 151 (4th Cir.1948); *Davison–Paxon Co. v. Caldwell,* 115 F.2d 189 (5th Cir.1941). None of these cases speak to the principle that a system of pre-signed affidavits, adopted and used widely by the title insurance industry as a means of accommodating the client, should preclude the creditor from defeating discharge.

**590**

continue to obtain funds when they have no intention of using those funds to pay off their creditors.

### III. *Attorney Markowitz and the Issue of Agency*

■ The Pitts contend that Carl Markowitz, counsel for the Pitts, acted beyond his capacity when he filled in the dates on the affidavits, thus relieving the Pitts of liability. The Pitts further assert that Markowitz has admitted to falsifying the affidavits. We find no support for the proposition that, by filling in dates on, and negotiating affidavits which inured to the Pitts' benefit, and at the bidding of the Pitts, Markowitz became the falsifier of the affidavits. Accordingly, this claim is denied as well.

---

### *Conclusion*

We REVERSE the lower court's finding that the essential elements of § 523(a)(2)(A) had not been met and REMAND the matter to the lower court for further proceedings on the issue of the amount of debt, indemnity or otherwise, which fits within the statute, to be ruled nondischargeable in view of the Pitts' false representations.

IT IS SO ORDERED.

### *ORDER*

Upon defendants' motion for reconsideration, we REVOKE that part of this Court's Order entered March 20, 1991 which directed the bankruptcy court to determine the amount of nondischargeable debt attributable to defendants' use of the false affidavits, and, in lieu thereof, ORDER the cause REMANDED to the bankruptcy court for further proceedings not otherwise inconsistent with the March 20, 1991 opinion.

This would permit the defendants to offer evidence, which was not the case in the prior hearing before the bankruptcy judge, which ordered summary judgment at the end of plaintiff's evidence.

IT IS SO ORDERED.