In the Matter of Richard W. SUTER, d/b/a National Investment Publishing Company, Debtor.

R.D. McCULLOUGH, II and Utica National Bank, as Trustee of the R.D. McCullough, II Self Employed Retirement Plan, Plaintiffs,

v.

Richard W. SUTER, d/b/a National Investment Publishing Company, Defendant.

Bankruptcy No. 85 B 4136.
Adv. No. 85 A 745.

United States Bankruptcy Court, N.D. Illinois, E.D.

April 29, 1986.

Gordon James Arnett, Chicago, Ill., for Suter.

Arnold H. Landis, Chicago, Ill., for McCullough.

## MEMORANDUM AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

R.D. McCullough, II has filed a motion for reconsideration of this Court's oral decision and order of February 14, 1986 granting in part and denying in part his motion for summary judgment. The complaint underlying the summary judgment motion sought to except a $56,935.62 debt from discharge under 11 U.S.C. § 523(a)(2)(A) as being based on fraud.

As indicated by the grant of McCullough's motion for summary judgment, this

1. Paragraph 15 of Count I of the district court complaint stated:

Defendant made the misrepresentations referred to above with knowledge of the falsity of the facts which were misrepresented. Defendant engaged in such misconduct with the intent of inducing plaintiffs to enter into the transactions referred to above; and plaintiffs believed defendant and reasonably relied on defendant's misrepresentations and fraudulent concealment in entering into such transactions. Absent such conduct on defendant's part plaintiffs would not have entered into those transactions. All of plaintiffs' losses and damages referred to herein were directly and proximately caused by the fraud of defendant as set forth above.

Court believes that the facts are not seriously in dispute and have been fully determined as to the parties by litigation which was carried to final judgment in advance of the filing of this bankruptcy case. The debtor was at one time involved in a business where he bought and sold coins for investors. The plaintiff, McCullough, was one of his customers. The Utica National Bank, on McCullough's behalf, sent the debtor $23,000 to buy coins for McCullough's self-employed retirement account managed by the Bank. The debtor purchased only three coins for McCullough, worth far less than the amount that the Bank sent to him. McCullough and the Bank then sued the debtor in the United States District Court for the Northern District of Illinois on four counts, including one count under the Racketeer Influenced and Corrupt Organizations Act (Title IX of the Organized Crime Control Act of 1970), 18 U.S.C. § 1962(c), and one count for the same type of fraud as set forth in § 523(a)(2)(A).[1] In fact, the district court complaint could not have better anticipated the future need for a § 523(a)(2)(A) nondischargeability complaint.[2] After a bench trial, Judge James B. Parsons of the District Court ruled in favor of McCullough and the Bank on "all counts," awarding $14,045.51 in actual damages and $7,141.14 in attorneys' fees. Judge Parsons then trebled the award under the civil damages provision of RICO, 18 U.S.C. § 1964(c). The Seventh Circuit affirmed the district court in *McCullough v. Suter*, 757 F.2d 142 (7th Cir.1985).[3]

2. Section 523(a)(2)(A) states in pertinent part:

(a) a discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extention, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...

3. In a separate criminal proceeding, the debtor pled guilty to federal mail fraud charges in connection with the coin investment promotion and was incarcerated. *See United States of America v. Suter*, 82 CR 563 (N.D.Ill. June 24,

Thereafter, on April 1, 1985, the debtor filed a Chapter 11 petition seeking to reorganize his investment business. McCullough filed a timely complaint pursuant to § 523(a)(2)(A) seeking to except the entire district court judgment from any discharge the debtor might receive in bankruptcy. *See also* 11 U.S.C. § 1141(d)(2). On McCullough's motion for summary judgment, this Court held that principles of collateral estoppel precluded the debtor from relitigating the issue of fraud in the bankruptcy court because it was finally resolved in the District Court lawsuit and the appeal from that decision. Specifically, this Court held that: 1) the issues were the same in the dischargeability and the District Court actions; [4] 2) the issues were actually litigated in the nonbankruptcy action; 3) the issues were determined by a valid and final judgment of the District Court; and 4) the determination was essential to the final judgment. *See Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir.1983); *United States Life Title Ins. Co. v. Dohm,* 19 B.R. 134, 137 (N.D.Ill.1982).

It was and is clear to the Court that the ruling of the District Court collaterally estops the debtor from challenging the nondischargeability of the debt he owes McCullough in this proceeding. The elements of fraud which are encompassed in the District Court's findings are identical with those required for a finding of nondischargeability under § 523(a)(2)(A).[5] Accordingly this Court granted McCullough's motion for summary judgment on the issue of dischargeability. However, the Court also ruled that only McCullough's actual damages of $14,045.51 and his attorneys' fees of $7,141.14 were not dischargeable under § 523(a)(2)(A). The Court held that the balance of McCullough's RICO judgment, the incremental amount resulting from the trebling of his actual damages under RICO, is dischargeable under the Bankruptcy Code. McCullough asks this Court to reconsider only this latter ruling.

Section 523(a)(2)(A) excepts from discharge "any debt ... for money ... *to the extent obtained by* ... actual fraud." [6] (emphasis added). The district court judgment here clearly is a debt for money under the Bankruptcy Code.[7] However, § 523(a)(2)(A) precludes the dischargeability of a debt for money *only* to the extent the money was obtained by actual fraud. In this case, the debtor defrauded McCullough in the amount of $14,045.51. Because of the debtor's fraud, McCullough had to expend $7,141.14 in attorneys' fees in an attempt to recover his actual damages. The treble damages awarded by the District Court under RICO are punitive in nature and in no way alter the extent of the damages for money obtained by actual

---

1983). *See also McCullough v. Suter,* 757 F.2d 142, 143 (7th Cir.1985).

**4.** *See supra* notes 1 and 2 and accompanying text.

**5.** It is important to remember that the District Court found for the plaintiffs on all counts. In order to find for the plaintiffs on Count I, the District Court necessarily had to find that (1) the debtor misrepresented material facts with respect to the coin investment program to the plaintiffs; (2) the debtor knew the representations were false; (3) the debtor intended to defraud the plaintiffs; (4) the plaintiffs reasonably relied on the debtor's misrepresentations; and (5) the plaintiffs' losses were attributable to such reliance. *See supra* n. 1; *see also* § 523(a)(2)(A); *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985); *Gabellini v. Rega,* 724 F.2d 579, 580–81 (7th Cir.1984).

**6.** McCullough relies on the language of § 523(a)(2)(A) as it existed prior to the Bankruptcy Amendments and Federal Judgeship Act ("BAFJA") in support of his argument that the treble damage award is nondischargeable. The pre-BAFJA version of § 523(a)(2)(A) provided for the nondischargeability of a "debt ... for obtaining money ... by ... actual fraud." Courts disagreed on whether punitive damages were dischargeable under the pre-BAFJA version of § 523(a)(2)(A). *Compare In re Maxwell,* 51 B.R. 244, 246 (Bankr.S.D.Ind.1983) *with Matter of Cheatham,* 44 B.R. 4, 8–9 (Bankr.N.D.Ala. 1984). McCullough's reliance on pre-BAFJA case law is misplaced because the version of § 523(a)(2)(A) that applies to this case, which was filed after BAFJA's effective date, contains the crucial phrase added to § 523(a)(2)(A) by BAFJA, "... to the extent obtained by ..." *See* Pub.L. 98–353, § 553.

**7.** 11 U.S.C. § 101(11) states that "'debt' means liability on a claim."

fraud. The trebling of McCullough's damages did not increase the amount of money which the debtor obtained from McCullough by actual fraud. That amount was and continues to be $14,045.51. It is possible to argue that the attorneys' fees incurred by the debtor in obtaining the pre-bankruptcy judgment also represent a debt for money obtained by the debtor's actual fraud, although that analysis is admittedly strained at best.[8] Thus, arguably $21,186.65 plus interest at the legal rate is the amount of the debt for money *to the extent obtained by* the debtor's fraud. It is not possible under any rational reading of the English language that two thirds of the trebling of McCullough's actual damages in any way represents a "debt for money ... to the extent obtained by ... actual fraud."

The result reached by this Court also accords with other provisions of the Bankruptcy Code, particularly § 523(a)(7). Section 523(a)(7) provides for the nondischargeability of a debt owed to a governmental unit for a fine, penalty, or forfeiture that is not compensation for any actual damages. In § 523(a)(7), Congress created a specific exception to discharge for noncompensatory damages. However, Congress clearly determined to not allow nongovernmental entities to seek the nondischargeability of punitive damages under § 523(a)(7). The language of §§ 523(a)(2)(A) and 523(a)(7) when read in harmony compel the conclusion that Congress intended noncompensatory damages to be excepted from discharge only where they are owed to a governmental entity pursuant to § 523(a)(7). No other result can be gleaned from interpreting the plain language of those sections.[9]

Finally it must be remembered that § 523(a)(2)(A) is a provision conflicting with the fresh start philosophy of the Bankruptcy Code. Therefore, it should be read no more broadly than required to implement the policy underlying § 523(a)(2)(A), i.e. the policy against debtors avoiding fraud-based debts in bankruptcy. *See In re Prestridge,* 45 B.R. 681, 684 (Bankr.W.D.Tenn.1985); *In re Lipscomb,* 41 B.R. 112, 116 (Bankr.E. D.Va.1984). If McCullough collects $14,045.51 plus interest and attorneys' fees from the debtor, he will be made whole. If he collects $56,935.62, he will, in effect, receive a windfall in the amount of $35,748.97. The Bankruptcy Code intends the former result. It does not intend the latter. Section 523(a)(7) recognizes that debtors are to be punished by governmental units in (and after) bankruptcy cases, not by creditors. The motion to reconsider is denied.

"Where Congress has carefully considered a particular policy and, in a complex and carefully drawn statute, has established a balance between that policy and other competing legislative goals, it is inappropriate for a court, based on its own view as to the relative importance of that policy, to create judicial exceptions to the clear language of the statute that are warranted neither by that language nor by the legislative history."

---

**8.** The debtor has not raised the question. Therefore, the Court will leave its previous decision with respect to attorneys' fees undisturbed. *See generally In re Hunter,* 771 F.2d 1126, 1131 (8th Cir.1985); *In re Martin,* 761 F.2d 1163, 1168 (6th Cir.1985); *In re Foster,* 38 B.R. 639, 641–42 (Bankr.M.D.Tenn.1984); *Matter of Loken,* 32 B.R. 205, 209 (Bankr.W.D.Wis.1983).

**9.** *See In re Robinson,* 776 F.2d 30, 38 (2d Cir. 1985), where the Second Circuit permitted a debtor to discharge a restitution debt, stating: