**In re Carlo Mario BOZZANO, Debtor.**

**Wayne T. PETERSON and wife, Cornelia G. Peterson, Plaintiffs,**

**v.**

**Carlo Mario BOZZANO, Defendant and Third–Party Plaintiff.**

**Bankruptcy No. B–91–11864C–7W.**
**Adv. No. 91–2478.**

United States Bankruptcy Court,
M.D. North Carolina,
Winston–Salem Division.

May 31, 1994.

Opinion on Motions to Amend
Opinion and Judgment
July 28, 1994.

Peter Juran, Winston–Salem, NC, for plaintiffs.

Michael R. Greeson, Winston–Salem, NC, for debtor/defendant and third-party plaintiff.

## MEMORANDUM OPINION

WILLIAM L. STOCKS, Bankruptcy Judge.

This dischargeability action arises out of a transaction in which the plaintiffs purchased a new residence from a corporation in which the debtor was the chief operating officer and one of the principal shareholders of the corporation. The plaintiffs contend that there were numerous defects in the structure and that they sustained substantial monetary damages in correcting these defects. The question presented in this case is whether the plaintiffs have a claim for a debt which is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). The plaintiffs contend that they do have such a claim because they were induced to purchase the residence by false pretenses, false representations or actual fraud on the part of the debtor.

### STATEMENT OF FACTS

During the latter part of 1988 Mr. Peterson, the male plaintiff, accepted employment in Winston–Salem, North Carolina and moved from Richmond, Virginia to Winston–Salem. Initially, Mr. Peterson lived in an apartment in Winston–Salem while Mrs. Peterson remained in Richmond with their two children who were in school. The Petersons planned to purchase a new home in Winston–Salem and Mr. Peterson began looking at new homes in various neighborhoods. One of the residences which Mr. Peterson looked at was a new home located at 2504 Huntington Woods Drive in Winston–Salem. When Mr. Peterson first visited this residence it was not finished, although construction was nearly complete. Eventually Mrs. Peterson visited the residence on Huntington Woods Drive and also liked it.

On February 15, 1989, the Petersons entered into a contract to purchase the residence on Huntington Woods Drive at a price of $186,000.00. The contract, which was prepared by a realtor, listed the seller as "Carlo Bozzano and Ed Zotian." However, this was an error on the part of the realtor, since the lot on which the house was located was owned by Bozzano Construction Company, Inc. and the residence was being built by that corporation. Although the Petersons were not furnished any details regarding the exact connection between Bozzano and Zotian and the corporation, the Petersons did learn that the corporation owned the house and lot and that they were acquiring the property from the corporation and not from Bozzano and Zotian personally. This infor-

mation became known to the Petersons at or shortly before the closing which took place on March 22, 1989. The deed which was delivered to the Petersons at the closing listed the grantor as "Bozzano Construction Co., Inc." and was executed by Mr. Bozzano as president of the corporation and by Mr. Zotian as secretary of the corporation.

Shortly after the closing and within a few weeks after moving into the house the Petersons began to experience problems with the house. Following a rainfall water leaked into the basement. When Fall arrived and heat was needed the furnace would not function properly. The first time that the Petersons tried to use the fireplace it malfunctioned and portions of the house filled with smoke. On top of these new and developing problems with the house, the Petersons could not get Mr. Bozzano and Bozzano Construction Company, Inc. to complete to their satisfaction a punchlist which had been agreed upon prior to the closing. Frustration on the part of the Petersons mounted. As time went on the Petersons found other defects in the house— some of them very minor and some of them very substantial. Initially, and for several months thereafter, Mr. Bozzano exerted some effort toward correcting the items on the initial punchlist as well as some of the new problems which developed such as the water problem in the basement and the problem with the fireplace. In approximately August or September of 1989, however, after becoming convinced that Bozzano was not using reliable people to handle the repairs and that he was dragging his feet in dealing with the problems the Petersons changed the locks on the house and refused to permit Bozzano to have free access to the house. The Petersons then proceeded on their own to arrange for the materials and labor required to correct the many defects which existed in the house. In the meantime the Petersons learned that neither Mr. Bozzano nor Bozzano Construction Company had a general contractor's license from the State of North Carolina at the time their residence was constructed and also that Bozzano Construction Company, Inc. had used the license number of another general contractor in order to obtain the building permit for their residence from the County. In July of 1990

the Petersons filed suit against Bozzano Construction Company and Mr. Bozzano individually in the Superior Court of Forsyth County. Shortly thereafter, and before any judgment was entered against him, Mr. Bozzano filed his Chapter 7 case. The remaining facts, as found by the court, are set forth in the next section of this opinion.

## DISCUSSION

■ The paradigmatic case for application of § 523(a)(2)(A) is one in which a debtor makes false representations to a creditor in order to obtain a loan and the creditor is induced to make the loan as a result of the debtor's false representations. Such a situation easily fits within the literal language of § 523(a)(2)(A), i.e., there is a "debt ... for money ... obtained by false representation" by the debtor. However, the cases involving § 523(a)(2)(A) illustrate that the applicability of § 523(a)(2)(A) is much broader than the case in which the debt is for loan proceeds which are not repaid. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (Debtor fraudulently induced the creditor to purchase corporate securities which were worthless); *In re Rubin,* 875 F.2d 755 (9th Cir.1989) (Debtor fraudulently induced homeowners to sell their residence for less than its true value); *In re Dallam,* 850 F.2d 446 (8th Cir.1988) (Debtor fraudulently induced insurance company to issue a policy of title insurance). It also has been applied in cases in which the debtor was a builder seeking to discharge debts owed to purchasers. *In re Kaufman,* 57 B.R. 644 (Bankr. E.D.Wi.1986); *In re Piercy,* 96 B.R. 953 (Bankr.W.D.Mo.1989). In these and similar cases, § 523(a)(2)(A) has been interpreted to make nondischargeable the loss or damage sustained by a creditor as a result of being induced into virtually any type of business transaction by fraud, false representations or false pretenses on the part of the debtor. This is the view of § 523(a)(2)(A) adopted by the plaintiffs in the present case. Thus, the plaintiffs' theory is that the debtor induced them to pay $186,000.00 for the purchase of a home which they would not have purchased but for the false pretenses and false representations of the debtor, Mr. Bozzano. They

seek to make nondischargeable the "debt" owed by the debtor for the loss they sustained as a result of having been induced by false pretenses to part with their $186,000.00 in exchange for a defective, poorly constructed house. This is a permissible theory under the language of § 523(a)(2)(A), which leads to the question of what must be shown by the plaintiffs in order to establish such claim.

■ Section 523(a)(2)(A) is operative where there has been "false pretenses, a false representation, or actual fraud" on the part of the debtor. Generally, the elements which must be established in order to prevail on a claim under § 523(a)(2)(A) are: (1) that the debtor made representation; (2) that at the time of making the representations, the debtor knew they were false; (3) that the debtor made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on the representation; and (5) that the creditor sustained a loss as a result of that reliance. *E.g., In re Booker,* 165 B.R. 164 (Bankr.M.D.N.C.1994); *In re Criswell,* 52 B.R. 184 (Bankr.E.D.Va.1985); *In re Showalter,* 86 B.R. 877 (Bankr.W.D.Va. 1988).

■ As used in § 523(a)(2)(A), "false pretenses" means implied misrepresentations or conduct intended to create and foster a false impression. *In re Schnore,* 13 B.R. 249 (Bankr.W.D.Wi.1981); *In re Shipe,* 41 B.R. 584, 586 (Bankr.D.Md.1984); *In re Garthe,* 58 B.R. 62 (Bankr.M.D.Fla.1986); *In re Herwig,* 77 B.R. 662, 664 (Bankr.S.D.Ill.1987); *In re White,* 130 B.R. 979, 985 (Bankr.D.Montana 1981).

■ The elements of false representation and false pretense do not necessarily require overt misrepresentations. Instead, omissions or a failure to disclose on the part of the debtor can constitute misrepresentations for purposes of nondischargeability where the circumstances of the case are such that omissions or failure to disclose create a false impression which is known by the debtor. *In re Booker, supra.*

■ Finally, the creditor is required to establish the elements required under § 523(a)(2)(A) only by a preponderance of the evidence and not by clear and convincing evidence or any other heightened burden of proof. *See Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988); and *Grogan v. Garner, supra.*

■ The next question is whether the evidence offered by the plaintiffs in this case established all of the requisites under § 523(a)(2)(A). In dealing with this question, the court recognizes that a primary purpose of bankruptcy law is to provide a fresh start for honest debtors. *Combs v. Richardson,* 838 F.2d 112, 116 (4th Cir.1988); *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). In order to fulfill this purpose of the Bankruptcy Code, exceptions to discharge are to be construed strictly against the creditor and liberally in favor of the debtor. *In re Kaufman,* 57 B.R. 644, 646 (Bankr.E.D.Wi.1986); *Gleeson v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915). It is with this underlying philosophy of bankruptcy firmly in mind that the court has assessed the evidence in the present case and concluded that the plaintiffs have satisfied their burden in this case.

The evidence offered by the plaintiffs established that they talked directly to the debtor several times before the closing took place. On these occasions the debtor made representations regarding the new home. For example, the debtor stated the house would be completed if the plaintiffs agreed to purchase it, that it was a quality built house and that the house had extra touches. At one point, the debtor even boasted of "old world" craftsmanship having gone into the house. It is doubtful that these general statements, standing alone, would be sufficient to establish nondischargeability under § 523(a)(2)(A). Nothing else appearing, these representations might be dismissed as mere "puffery". *See In re Schwartz & Meyers,* 130 B.R. 416, 423 (Bankr.S.D.N.Y.1991). However, these representations were not made in isolation and do not stand alone. When examined in the context in which they were made in the present case, these statements take on great significance. The pertinent background for assessing the culpability of the debtor's statements and conduct must begin with the circumstances under which

the initial building permit for the house was obtained. The evidence established that, prior to construction, the building permit for the house was obtained by fraudulent means from Forsyth County. In that connection, in making application for the building permit, Bozzano's wife falsely represented that Bozzano was a licensed general contractor and did so by utilizing the state license number of another general contractor. The license number of the other contractor was falsely represented as being the general contractor's license number for Bozzano. The debtor was aware that his wife was obtaining the permit, was aware that she intended to furnish false information to the County and concurred in her doing so. Hence, his conduct and motives were tainted from the outset.

The evidence also established that from this starting point forward the debtor intentionally created and fostered a false impression regarding his qualifications and concerning the quality of the house. Prior to beginning construction of the house, Bozzano had worked only as a carpenter and subcontractor and had never had the overall responsibility for the construction of a house as a general contractor. Prior to or during the early stages of construction, Bozzano became aware that under North Carolina law he was required to have a general contractor's license in order to construct the Peterson house. While he was in the process of building the house, Bozzano attempted to obtain a general contractor's license and failed the exam. He nevertheless proceeded unlicensed and with a fraudulently obtained building permit, to complete and sell a house with major construction defects. In fact, Bozzano took the examination for a general contractor's license a second time and failed the examination again. At no time did he disclose any of these circumstances to the Petersons. Instead, he held himself out as a qualified contractor and overtly represented to the Petersons that the house was quality built and had extra touches. Both the impression he created regarding himself as being a qualified builder and the representations he made regarding the quality of the house were false and misleading. In that connection, the evidence regarding the poor quality of the workmanship and the major

deficiencies in the house was overwhelming. There were major construction defects throughout the house, including a defect in the fireplace which was extremely hazardous and which required that the entire fireplace and outside chimney be replaced; the house was significantly "out of square"; the drainage system around the basement of the house was deficient and ineffective, resulting in extensive flooding in the basement; there were significant problems with the bay window in the house; one of the weight bearing walls was not properly supported and had to be rebuilt; and additional support columns were required for the basement. These defects established that the house was not a quality built house with extra touches, contrary to representations of Bozzano. The defects also established, because of their number and magnitude, that Bozzano was not qualified to be the general contractor for a large residence of the type involved in this case, which was just the opposite of the false impression created by Bozzano that he was qualified to build the house and was doing so competently.

The court recognizes that, as emphasized by the debtor, he never affirmatively stated to the Petersons that he was a licensed general contractor and that they never asked him if he had a license. However, the Petersons claim does not depend on such an overt misrepresentation by Bozzano or whether the plaintiffs asked whether he held a license. Nothing that Bozzano said or did during construction raised a red flag concerning his status and qualifications. The Petersons, acting in good faith, purchased this house unaware of the fact that it was constructed by an unlicensed, unqualified builder who had recently failed the general contractors licensing exam and, prior to that, fraudulently obtained a building permit for the house. This court does not believe that the Petersons were required to ask Bozzano whether he was a licensed contractor. "While it is certainly not practicable to require the debtor to 'bare his soul', before the creditor, the creditor has the right to know those facts touching upon the essence of the transaction." *In re Van Horne*, 823 F.2d 1285, 1288 (8th Cir.1987). In the present case, to the

extent that affirmative conduct or inquiry was required, the affirmative conduct which was required was on the part of Bozzano to disclose the information he had regarding his qualifications in the construction of the house and not upon the plaintiffs to inquire about matters should have been valid assumptions, namely, that a valid building permit had been obtained and that the person building the house was licensed in accordance with law. In short, the evidence established that Bozzano knowingly made statements and engaged in conduct that created a false impression regarding his qualifications and abilities as a general contractor and regarding the quality of the house. Notwithstanding, he said and did nothing to correct the false impressions that he had created, under circumstances in which he must have known that the plaintiffs were acting in reliance on the false impressions. Such conduct on the part of Bozzano constituted false representations and false pretenses within the meaning of § 523(a)(2)(A).

■ The plaintiffs are required to prove that the debtor made the false statements and created the false impression regarding his qualifications with the intention of deceiving the plaintiffs as purchasers of the house. The plaintiffs carried this burden. The debtor admitted that he knew that he was required to be licensed in order to build the house and admitted that he knew that his wife had obtained the building permit through false representations. He also was aware of his limited experience and observed the house as it was constructed and participated in the defective workmanship which went into the house. At the time that he talked with the plaintiffs, the debtor was fully aware that they were in the process of making a decision whether to buy his house instead of other houses which they were considering. These and the other surrounding circumstances, established that the debtor had the intention of deceiving the plaintiffs and inducing them to purchase his house. This is true even though there were no direct admissions by the debtor that he intended to deceive or other direct evidence of his intention to do so. Such direct evidence of intent to deceive is not required under § 523(a)(2)(A). Instead, because it is nearly impossible to obtain direct proof of a debtor's state of mind, a creditor may present evidence of the surrounding circumstances from which such intent may be inferred. *In re Van Horne*, 823 F.2d 1285, 1287 (8th Cir. 1987); *In re Garthe, supra.* The debtor does not overcome this inference with an unsupported assertion of honest intent. In the present case, the surrounding circumstances were more than sufficient to establish that the debtor intended to deceive the plaintiffs through the false statements which he made regarding the house and through the false and misleading impression he created regarding his qualifications and the quality of the house.

The plaintiffs also established that they relied upon the false representations and false impression created by the debtor. Mr. Peterson testified in detail regarding the criteria which he had established for his new house and described the process he went through in selecting the house built by Bozzano. Mr. Peterson's testimony was unequivocal that he relied upon the statements made by the debtor regarding the house, relied upon the impression created by the debtor that he was a qualified contractor capable of building a quality house and, further, that had he known that the debtor, in fact, was unlicensed, he would never have purchased the house.

There is some debate regarding whether, under § 523(a)(2)(A), a creditor must demonstrate that his or her reliance was "reasonable", and, if so, the proper standard for determining reasonableness. See *In re Showalter, supra; In re Ophaug*, 827 F.2d 340 (8th Cir.1987) (no "reasonableness" requirement); *In re Phillips*, 804 F.2d 930 (6th Cir.1986) (adopting reasonableness standard but with low threshold); *In re Kimzey*, 761 F.2d 421 (7th Cir.1985) (reliance must be reasonable). It is not necessary for the court in this case to determine whether there is a requirement that the creditors' reliance be reasonable because under the circumstances of the present case, the reliance of the plaintiffs was entirely reasonable. In that regard, it is significant that the Petersons made a reasonable inspection and reasonable inquiry regarding the house, that the defects in the

house were latent and not discernable from a reasonable inspection and that nothing was said or done prior to closing which put them on notice that there was anything wrong with the house or with the builder.

Finally, the plaintiffs established that they sustained significant damages as a result of the false representations and false pretenses on the part of the debtor. The house was purchased at a price of $186,000.00 in March of 1989. In February of 1992, after the numerous latent defects in the house had been exposed, the property was reappraised by the Forsyth County tax authorities at which time the appraised value of the house was reduced by $54,000.00, representing a functional devaluation by the tax authorities. The plaintiffs established the amount which was spent by them in an effort to correct the various defects which were found after the house was purchased. In that regard, the plaintiffs paid $46,919.25 to contractors and subcontractors for corrective work. In addition, the plaintiffs themselves spent $5,845.62 for materials which they purchased for use in correcting the defects in the house. During the more than two years which was required to correct the defects, the plaintiffs incurred moving and storage expenses of $4,238.45. The evidence, thus, established expenses of $57,003.32 on the part of the plaintiffs in correcting the defects which existed in their home. This figure must be reduced by the sum of $40,000.00, representing the amount which the plaintiffs were able to recover from Mr. Zotian, the other principal in Bozzano Construction Company, Inc. The court finds that the net amount of indebtedness which the plaintiffs are entitled to claim and which is nondischargeable is $17,003.32. The plaintiffs also sought to recover amounts which they spent for marriage and psychological counseling fees incurred after they moved into the house. The plaintiffs argued that these counseling fees were recoverable because the stress and strain resulting from the numerous problems with the house caused the problems requiring the counseling. However, there was no convincing evidence which connected the counseling or therapy with the defendant's conduct, i.e., no evidence which established that the condition or problem necessitating the counseling was proximately caused by the defendant's conduct. Also, the court has rejected the argument that the amount of the nondischargeable claim should be increased in order to include, in effect, an award of damages to the plaintiffs based upon the time and effort they spent in arranging for and participating in the work required to correct the defects in the house. In summary, after considering all of the evidence offered regarding the monetary loss sustained by the plaintiffs as a result of the debtor's conduct, the court concludes that the correct amount of the nondischargeable claim is $17,003.32 and that an appropriate order should be entered adjudging that the plaintiffs are entitled to recover that amount from the debtor and that such recovery is nondischargeable pursuant to § 523(a)(2)(A).

## MEMORANDUM OPINION ON MOTIONS TO AMEND OPINION AND JUDGMENT

This is a dischargeability action in which the plaintiffs sought relief pursuant to § 523(a)(2)(A) and § 523(a)(6). Following the trial in this action, the court concluded that the plaintiffs had established that they were entitled to relief pursuant to § 523(a)(2)(A). The plaintiffs did not establish that they were entitled to relief under § 523(a)(6) and the judgment entered in favor of the plaintiffs was based solely upon § 523(a)(2)(A).[1] In the memorandum opinion

---

1. Section 523(a)(6) makes nondischargeable "willful and malicious" injury to the property of another entity. To prevail in a case involving § 523(a)(6) the plaintiff must prove by a preponderance of the evidence *both* willful *and* malicious injury. In the present case the plaintiffs failed to establish any malicious injury by the defendant. It is not necessary to show actual hatred, spite or ill will on the part of a defendant in order to establish malice within the meaning of § 523(a)(6). However, it is necessary to establish that the defendant acted with knowledge that his actions were certain or substantially certain to cause injury. *See, e.g., In re Britton,* 950 F.2d 602 (9th Cir.1991); *Vulcan Coals, Inc. v. Howard,* 946 F.2d 1226 (6th Cir.1991); *In re Posta,* 866 F.2d 364 (10th Cir.1989); *In re Farfalla,* 132 B.R. 628 (Bankr.D.Neb.1991). In the present case the evidence did not establish that the defendant acted with the knowledge that his actions were certain or substantially certain to

the court found that the plaintiffs had established expenses of $57,003.32 in correcting the defects which existed in the home which they purchased from the defendant's corporation. This figure was reduced by the sum of $40,000.00, representing the amount which the plaintiffs were able to recover from the other principal in the corporation. The court concluded that the net amount of the actual damages sustained by the plaintiffs was $17,003.32 which the court adjudged as nondischargeable under § 523(a)(2)(A).

Two motions are now before the court. The first is plaintiffs' motion pursuant to Rule 59(e) and Rule 60(b) to amend or correct the memorandum opinion and judgment entered on May 31, 1994 in the following respects: (a) to treble the damages sustained by the plaintiffs and (b) to award attorneys' fees to the plaintiffs pursuant to G.S. § 75-16.1(1). The other motion before the court is defendant's motion pursuant to Rule 60(b) to reduce the amount awarded under the earlier judgment by an additional $10,000.00, based upon that amount having been paid to the plaintiffs by the other principal in the corporation since the entry of the memorandum opinion and judgment on May 31, 1994.

### ISSUES

The issues raised by the pending motions are as follows:

(1) Whether treble damages are nondischargeable under § 523(a)(2)(A)?

(2) Whether the plaintiffs are entitled to recover attorneys' fees in this adversary proceeding?

(3) If so, whether such attorneys' fees are nondischargeable under § 523(a)(2)(A)?

(4) Whether the defendant is entitled to an additional credit of $10,000.00 against the judgment which heretofore was entered against the defendant in this adversary proceeding?

### DISCUSSION

1. *Dischargeability of treble damages under § 523(a)(2)(A).*

The plaintiffs argue that under state law they are entitled to have the compensatory

damages recoverable from the defendant trebled. According to the plaintiffs, the court has held in its memorandum opinion that the defendant consciously withheld information and misrepresented his qualifications and that such findings are tantamount to a finding of fraud. Plaintiffs argue that this brings this adversary proceeding within the ambit of cases such as *Robertson v. Boyd,* 88 N.C.App. 437, 363 S.E.2d 672 (1988) and *Wilder v. Squires,* 68 N.C.App. 310, 315 S.E.2d 63, *cert. denied,* 311 N.C. 769, 321 S.E.2d 158 (1984), which hold that proof of fraud necessarily establishes a violation of the North Carolina Unfair and Deceptive Trade Practices Act and triggers the imposition of treble damages. For purposes of the motions now before the court, it will be assumed that if plaintiffs' claim had been tried in state court, under state law they would have been entitled to have the compensatory damages recoverable from the defendant trebled pursuant to N.C.G.S. § 75-16. It does not follow, however, that the amount of the *nondischargeable* damages recoverable in this adversary proceeding should be trebled. The purpose of this adversary proceeding is not merely to determine the amount of damages which the plaintiffs could have recovered under state law if plaintiffs had tried their suit in state court and no bankruptcy had ensued. Rather, the purpose of this adversary proceeding is to determine the amount of *nondischargeable* indebtedness owed to the plaintiffs by the defendant in order to establish the amount which should be excepted from the discharge granted to the defendant. This is a bankruptcy question which must be determined under federal bankruptcy law. *See, In re Diaz,* 120 B.R. 967, 977 (Bankr.N.D.Ind.1989). This requires consideration and application of § 523(a)(2)(A) which is controlling in this adversary proceeding.

The cases are split on the question of whether treble damages are nondischargeable under § 523(a)(2)(A). Based upon the particular wording of § 523(a)(2)(A), a majority of the cases have concluded that treble

cause injury. Hence, a necessary element of

§ 523(a)(6) is missing in this case.

damages are not nondischargeable under § 523(a)(2)(A). *See, e.g., In re Levy,* 951 F.2d 196 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *In re Wien,* 155 B.R. 479 (Bankr.N.D.Ill. 1993); *In re Day,* 137 B.R. 335 (Bankr. W.D.Mo.1992); *In re Freeman,* 142 B.R. 758 (Bankr.E.D.Va.1991); *In re Church,* 69 B.R. 425 (Bankr.N.D.Tx.1987); and *In re Suter,* 59 B.R. 944 (Bankr.N.D.Ill.1986). As these cases point out, § 523(a)(2)(A) excepts from discharge "any debt ... for money ... *to the extent obtained by* .... false pretenses, a false representation, or actual fraud...." (Emphasis supplied). The majority and better reasoned rule is that this language excepts from discharge only the actual value of the money or property received by a debtor by virtue of false pretenses, a false representation or fraud. Under this interpretation of § 523(a)(2)(A), only the actual loss or damage sustained by the creditor is nondischargeable. *See, In re Freeman, supra* at 761:

> "Section 523(a)(2) is designed to recover what was actually lost from the creditor, not what the creditor expected to receive under the contract. Thus, even where a state court fraud judgment is afforded collateral estoppel effect, bankruptcy courts typically limit the § 523(a)(2) exception from discharge to compensatory damages and declare state court punitive damage awards dischargeable."

In accord, *In re Wilson,* 72 B.R. 956 (Bankr. M.D.Fla.1987) (only money actually obtained by fraud is nondischargeable); *Muleshoe State Bank v. Black,* 77 B.R. 91 (Bankr. N.D.Tex.1987) (under § 523(a)(2)(A) only the amount actually obtained by false pretenses is nondischargeable).

Since punitive damages and treble damages are punitive in nature, they do not change or increase the extent of the actual value of the money or property which was obtained by the debtor or lost by the creditor. This interpretation of § 523(a)(2)(A) was articulated as follows in *In re Suter,* 59 B.R. 944 (Bankr.N.D.Ill.1986):

> "However, § 523(a)(2)(A) precludes the dischargeability of a debt for money only to the extent the money was obtained by actual fraud. In this case, the debtor de-

frauded McCullough in the amount of $14,045.51. Because of the debtors fraud, McCullough had to expend $7,141.14 in attorneys' fees in an attempt to recover his actual damages. The treble damages awarded by the District Court under RICO are punitive in nature and in no way alter the extent of the damages for money obtained by actual fraud. The trebling of McCullough's damages did not increase the amount of money which the debtor obtained from McCullough by actual fraud. That amount was and continues to be $14,045.51. It is possible to argue that the attorneys' fees incurred by [McCullough] in obtaining the prebankruptcy judgment also represent a debt for money obtained by the debtors actual fraud, although that analysis is admittedly strained at best. Thus, arguably $21,186.65 plus interest at the legal rate is the amount of the debt for money to the extent obtained by the debtor's actual fraud. It is not possible under any rational reading of the English language that two-thirds of the trebling of McCullough's actual damages in any way represents a "debt for money ... to the extent obtained by ... actual fraud." 59 B.R. at 946–47.

In the present case, the actual damages caused by the misconduct of the defendant was $57,003.32, representing the expenses actually incurred by the plaintiffs as a result of the misconduct of the defendant. Under North Carolina law, treble damages do not represent compensatory or actual damages sustained by a plaintiff. Instead, like punitive damages, treble damages are punitive and also are remedial in that they encourage private enforcement of the statutes regulating trade practices. *See, Marshall v. Miller,* 302 N.C. 539, 276 S.E.2d 397 (1961); *Seafare Corp. v. Trenor Corp.,* 88 N.C.App. 404, 363 S.E.2d 643 (1988). As such, treble damages do not represent an actual loss or damage to the plaintiff. Such damages, therefore, are not nondischargeable under § 523(a)(2)(A). It follows that the plaintiff's motion should be denied to the extent that it seeks to increase the amount of the nondischargeable obligation in this case by trebling the amount of

the actual loss or damage which was sustained by the plaintiffs.

### 2. *The claim for attorneys' fees.*

Plaintiffs also argue that they should be awarded attorneys' fees in this dischargeability action. Plaintiffs have requested the attorneys' fees under G.S. § 75–16.1(1), the North Carolina statute which is applicable in a civil action in which the plaintiff alleges unfair or deceptive acts or practices pursuant to G.S. § 75–1.1. G.S. § 75–16.1 provides that the presiding judge may "in his discretion" allow a reasonable attorney fee to the attorney representing the prevailing party in an action involving G.S. § 75–1.1. As the wording of the statute makes clear, whether to award attorneys' fees under this statute is within the discretion of the trial court. *Morris v. Bailey,* 86 N.C.App. 378, 358 S.E.2d 120 (1987). Therefore, assuming that the plaintiffs are correct in their contention that the defendant committed unfair or deceptive practices within the meaning of G.S. § 75–1.1, and that G.S. § 75–16.1 therefore is applicable in this case, the matter of whether to award an attorneys' fee to the attorney for the plaintiffs is discretionary with the court. For purposes of the defendant's motion, the court will assume that G.S. § 75–16.1(1) is applicable in this case and will exercise its discretion regarding the award of an attorneys' fee.

Having considered all of the circumstances involved in this case, the court, in its discretion, declines to award an attorneys' fee in this case. Having ruled that the plaintiffs are not entitled to an attorneys' fee in this case, the court does not reach and need not decide the issue of whether attorneys' fees are nondischargeable under § 523(a)(2)(A).

### 3. *Additional credit on the judgment.*

■ The evidence adduced at the trial of this action established that the plaintiffs sued Ed Zotian, the other principal in Bozzano Construction Company, for the same damages which they sought to recover from the defendant. The evidence further established that at the time of the trial, the plaintiffs had collected $40,000.00 of these damages from Zotian. The memorandum opinion and order entered by the court on May 31, 1994, reduced the amount to be recovered by the plaintiffs from the defendant by the $40,000.00 which the plaintiffs already had received from Zotian. This is entirely consistent with the principal that only the amount of a creditor's actual loss should be treated as non-dischargeable under § 523(a)(2)(A). It also comports with fairness and equity that a plaintiff not recover twice for the same loss. It was stipulated in open court that the plaintiffs have received an additional $10,000.00 from Zotian since the memorandum opinion and judgment were entered in this case on May 31, 1994. Based upon this additional recovery, the court concludes that the defendant is entitled to an additional credit of $10,000.00 against the judgment which was entered in favor of the plaintiffs, thereby reducing the amount due under the judgment to $7,003.32.

Orders will be entered contemporaneously herewith denying the plaintiffs' motion and granting the defendant's motion in accordance with this memorandum opinion.

This 28th day of July, 1994.