**In re Douglas Ray BEBBER, Debtor.**

**Douglas Ray BEBBER, Appellant,**

**v.**

**J.M. WESTALL & COMPANY, INC., Appellee.**

**Civil No. 1:94CV90.**

United States District Court,
W.D. North Carolina,
Asheville Division.

June 28, 1995.

David R. Hillier, Gum & Hillier, PA, Asheville, NC, for Douglas Ray Bebber.

David G. Gray, Westall, Gray & Connolly, Asheville, NC, for J.M. Westall & Company, Inc.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on appeal from the Judgment of U.S. Bankruptcy Court Judge George R. Hodges, entered May 6, 1994. For the reasons stated below, the Judgment is affirmed.

### I. STANDARD OF REVIEW

■ The decision of the Bankruptcy Court is reviewed by a two-step process. Reversal of the findings of fact of the Bankruptcy Court may occur only where the findings are clearly erroneous. *In re Collins,* 985 F.2d 553 (4th Cir.1993) (citing *Williamson v. Fireman's Fund Insurance Co.,* 828 F.2d 249 (4th Cir.1987)); *In re Bryson Properties, XVIII,* 961 F.2d 496 (4th Cir.), *cert. denied,* 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992). The conclusions of law of the Bankruptcy Court are reviewed *de novo. In re Bryson Properties,* 961 F.2d at 499.

Findings of fact are clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Green,* 934 F.2d 568, 570 (4th Cir.1991) (citing *In re First Federal Corp.,* 42 B.R. 682 (W.D.Va.1984)). As stated by the Supreme Court:

> If the [lower court's] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*In re Sherwood Ford, Inc.,* 1992 WL 295951 at *2, 1992 U.S.Dist. LEXIS 15516 at *6 (D.Md.1992) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

■ In addition, due regard must be given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses. *Coston v. Bank of Malvern (In re Coston),* 991 F.2d 257, 262 (5th Cir.1993).

### II. FINDINGS OF FACT

Having conducted a *de novo* review of the record, including the transcript of the hearing conducted by Judge Hodges on April 20, 1994, this Court cannot find that the findings of fact below are clearly erroneous. In making his determination, Judge Hodges had before him the testimony of the only two witnesses involved in this proceeding and due regard is given his credibility determination. To that end, a brief recitation of the facts is made.

In October or November 1983, Douglas Bebber (Appellant or Bebber) telephoned J.M. Westall (Westall) to advise that he was constructing Windswept Drive Condominiums using J.E. Lawson & Sons (Lawson) as builder. Transcript of April 20, 1994, Hearing at 5. Bebber asked if Westall was interested in supplying materials to Lawson on the project. *Id.* Since Westall already had

a business relationship with Lawson, he agreed. *Id.* Westall began supplying materials as ordered in November 1983. *Id.*

In June 1984, Westall visited Ellen Goldstein at the Property Shop to consult about business he had with her on a project. *Id.,* at 8. Goldstein and Bebber were partners not just in a real estate brokerage but also in the Windswept Drive project. *Id.* During the visit, Bebber came out of his office and asked Westall how the Windswept project was going. *Id.* Bebber then stated, "I wanted to make sure that you are satisfied because this is going to be one job ... you will not lose any money on because we have him bonded." *Id.,* at 9. Westall testified that he felt Bebber was reassuring him due to a previous experience with Bebber in which Westall had to pursue payment. *Id.*

Westall continued to supply materials to Lawson until January 1986, despite the fact that Lawson was consistently delinquent in payments. The balance of Lawson's account fluctuated, depending on the amounts he was able to pay; but, he never brought the account current. *Id.,* at 10–11. In January 1986, Lawson left the job and subsequently declared bankruptcy. At this time, Westall hired an attorney and in February 1986, inquired about the bond status. *Id.,* at 12. At this time he learned that Lawson was not bonded.

Bebber testified that the conversation concerning bonding actually occurred in June or July 1985. *Id.,* at 30. According to him, Westall asked him if Lawson was bonded. *Id.,* at 31. Bebber replied that he was sure Lawson was bondable, but he would call Lawson and find out. *Id.* After ascertaining from Lawson he did not have a bond, Bebber called Westall and told him. *Id.,* at 32.

On redirect examination, Westall testified that near the end of the project, he asked Bebber if Lawson was bonded. *Id.,* at 39. At that point, Bebber said he would have to call Lawson to find out.

After Lawson's bankruptcy, Westall sued Bebber individually and the corporation owning the Windswept Drive project in state court. On appeal of the verdict, the North Carolina Court of Appeals remanded the case to the Superior Court for further proceed-ings. In May 1992, Westall received a favorable jury verdict against Bebber individually based on violations of the North Carolina Unfair Trade Practices Act, N.C.Gen.Stat. §§ 75–1, *et seq.*

## III. DISCUSSION

The only issue raised on appeal is whether the Bankruptcy Court's determination that Westall's claim is nondischargeable is erroneous. In his brief on appeal, Appellant recounted the issue on appeal as including the Bankruptcy Court's erroneous reliance on the doctrine of collateral estoppel. However, Appellant presented no argument on the issue. The Court will address it briefly.

"The application of collateral estoppel to preclude relitigation of questions actually litigated and necessarily decided by a jury in an earlier ... action is consistent with the policy of the bankruptcy statute ...". *Combs v. Richardson,* 838 F.2d 112, 115 (4th Cir.1988). Collateral estoppel precludes relitigation of an issue previously decided if the party against whom it is asserted had a full and fair opportunity to present his case in the prior litigation. *Id.,* at 114. The determination of whether or not a claim is dischargeable is uniquely within the jurisdiction of the Bankruptcy Court which must make that determination based on facts. *Id.,* at 115. But, in order to reach that decision, the statute does not require the Bankruptcy Court to relitigate issues already decided. *Id.*

In a claim for unfair trade practices pursuant to N.C.Gen.Stat. § 75–16, the jury must find that the defendant engaged in certain conduct which was the proximate cause of damages to the plaintiff. *In re Kittrell,* 115 B.R. 873 (Bankr.M.D.N.C.1990). While the jury makes the factual findings, the court then, as a matter of law, must determine whether the conduct in question was a deceptive and unfair trade practice which affected commerce. *Medina v. Town & Country Ford, Inc.,* 85 N.C.App. 650, 355 S.E.2d 831 (1987), *aff'd,* 321 N.C. 591, 364 S.E.2d 140 (1988).

In remanding Westall's case against Bebber for a new trial, the North Carolina Court of Appeals ruled that if the jury determined that Bebber's actions caused Westall to be-

lieve that Lawson was bonded, this would constitute a deceptive act. *J.M. Westall & Co., Inc. v. Windswept View of Asheville, Inc.,* 97 N.C.App. 71, 74, 387 S.E.2d 67, 68 (1990). Thus, the factual determination to be presented to the jury on remand was whether or not the representations were made and, if so, whether they caused Westall to continue to do business with Lawson. *Id.,* 97 N.C.App. at 75, 387 S.E.2d at 69. The jury determined at the end of the second trial that Bebber represented to Westall that Lawson was bonded to cover payments to suppliers on the Windswept Drive project, and that Westall was damaged as a proximate result of those representations. **Judgment, entered in the General Court of Justice, Superior Court Division, Buncombe County, North Carolina, May 7, 1991.**

In order to prevail on a nondischargeability claim pursuant to § 523(a)(2)(A), the creditor must show (1) that the debtor made representations; (2) that at the time of so making, the debtor knew them to be false; (3) that the representations were made with intent to deceive; (4) that the creditor relied on the representations; and (5) that the creditor was damaged as a result thereof. *Peterson v. Bozzano (In re Bozzano),* 173 B.R. 990, 993 (Bankr.M.D.N.C.1994). The jury in Westall's state court action made a finding as to elements 1 and 5 above. The state court made findings as a matter of law as to the remaining elements.[1]

█ Nonetheless, while Judge Hodges could have relied exclusively on collateral estoppel to preclude relitigation,[2] he allowed the parties to proceed with a hearing and made determinations pursuant to § 523(a)(2)(A). It clearly was not erroneous for him also to rely on the state court findings in making his determination.

█ Appellant's first argument is that no proof was adduced that he knew the representation to be false when made, thus failing to satisfy the first element. The conversa-

tion between Bebber and Westall is characterized as a casual one between two businessmen. Appellant argues that actual fraud, not fraud implied in law, must be shown. This argument is contrary to the wording of the statute itself, which makes a distinction between representations and actual fraud. 11 U.S.C. § 523(a)(2)(A).[3] Moreover, "§ 523(a)(2)(A) has been interpreted to make nondischargeable the loss or damage sustained by a creditor as a result of being induced into virtually any type of business transaction by fraud, false representations or false pretenses on the part of the debtor." *In re Bozzano,* 173 B.R. at 992. As used in this section, false pretenses and misrepresentations include "implied misrepresentations or conduct intended to create and foster a false impression". *Id.,* at 993. Such "representations [are] not made in isolation and do not stand alone" but are "examined in the context in which they were made" for a determination of whether debtor knew them to be false. *Id.*

Judge Hodges examined Bebber's assurance of bonding in the context of the total circumstances, including the parties' past business experience with each other which had led to an unpleasant collection matter. His determination that Bebber represented to Westall that Lawson was bonded in order to induce him into the construction project was not clearly erroneous. Moreover, it was for the Bankruptcy Court to make credibility determinations and inferences therefrom. *See also, In re Ashley,* 903 F.2d 599 (9th Cir.1990) **(court's determination that debtor's comments were not "mere opinions" and lacked credibility was not erroneous; court could draw reasonable inferences therefrom).**

Appellant's second argument is that there was no proof that he intended to deceive Westall by his comments, claiming only reckless conduct may qualify. This, also, is against the weight of case law. The Bankruptcy Court found, considering the totality

---

**1.** The burden of proof in both the state and bankruptcy court proceedings is by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

**2.** *See Grogan,* 498 U.S. at 284, 111 S.Ct. at 658.

**3.** The statute provides in pertinent part:

(a) A discharge ... does not discharge an individual debtor from any debt—
(2) for money, property, services ... to the extent obtained by
(A) false pretenses, a false representation, or actual fraud....

of circumstances, that Bebber intended to deceive Westall in order to induce him to participate in the project. This finding is true even though there were no direct admissions by the debtor that he intended to deceive or other direct evidence of his intention to do so. Such direct evidence of intent to deceive is not required under § 523(a)(2)(A). Instead, because it is nearly impossible to obtain direct proof of a debtor's state of mind, a creditor may present evidence of the surrounding circumstances from which such intent may be inferred.

*In re Bozzano,* 173 B.R. at 995 (citing *In re Van Horne,* 823 F.2d 1285, 1287 (8th Cir. 1987)); *see also, Lawyers Title Ins. Corp. v. Pitt,* 157 B.R. 585, 588 (E.D.Va.1991) ("**An overt misrepresentation is not a necessary predicate for satisfying the scienter element under § 523(a)(2)(A) ...**"); *In re Kimzey,* 761 F.2d 421 (7th Cir.1985) (**an intent to deceive may be inferred from a false representation which the debtor should have known would induce a creditor**).

Appellant's last argument is that any reliance by Westall on Bebber's representations was unreasonable in light of a failure to verify bonding. The Fourth Circuit has not considered whether or not reliance pursuant to § 523(a)(2)(A) must be reasonable. *Lawyers Title Ins. Corp.,* 157 B.R. at 589. The only case within this Circuit that addresses the issue determined that reliance need not be reasonable. *In re Showalter,* 86 B.R. 877 (Bankr.W.D.Va.1988). However, this Court will follow the pattern of other North Carolina courts and address the issue "in light of the totality of the circumstances." *John J. O'Connor, CPO, Inc. v. Booker (In re Booker),* 165 B.R. 164, 170 (Bankr.M.D.N.C.1994) (citing *In re Ledford,* 970 F.2d 1556 (6th Cir.1992)). Applying this standard, the Bankruptcy Court noted that the parties had a prior unpleasant business relationship concerning the issue of payment. *Id.* The representation made by Bebber was not solicited by Westall, but made as a positive affirmation. Later, when "red flags" went up, Westall specifically asked Bebber whether Lawson was bonded. *Id.* Lawson continued to make payments on his accounts, at times significant payments. Westall testified that he understood that as Lawson increased his workforce in order to complete the job, his bills would increase. He also stated that based on his past experience, banks holding mortgages on the project would red flag the accounts when the contractor became delinquent. Based on the "totality of the circumstances," the determination of the Bankruptcy Court was not clearly erroneous. *See also, Lawyers Title Ins. Corp., supra; In re Bozzano, supra; In re Coston, supra* (applying the *Ledford* test and refusing to set aside the court's finding of reasonable reliance where representation was based on one telephone call).

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that the appeal from the Judgment of U.S. Bankruptcy Court Judge George R. Hodges, entered May 6, 1994, is hereby **DISMISSED** and the Judgment is hereby **AFFIRMED**.

This matter is remanded to the Bankruptcy Court for such further proceedings as it may deem necessary.