**Barbara MORLANG, Appellee,**

**v.**

**Stephen Bryant COX, Appellant.**

**No. Civ.A. 98–0073–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

May 20, 1998.

Stephen Bryant Cox, Roanoke, VA, pro se.

Charles Robison Allen, Jr., Roanoke, VA, for appellant.

Wayne O.S. Haig, Huffman & Haig, P.C., Roanoke, VA, for appellee.

Evelyn K. Krippendorf, Roanoke, VA, trustee.

## MEMORANDUM OPINION

KISER, Senior District Judge.

Before me now is the debtor's appeal from an order of the United States Bankruptcy Court granting the creditor's motion to declare a certain debt non-dischargeable. The parties have fully briefed the issues involved and presented oral argument. The appeal is, therefore, ripe for disposition. For the following reasons, the judgment of the Bankruptcy Court is AFFIRMED.

## BACKGROUND

On October 24, 1994, Barbara Morlang and Stephen Bryant Cox entered into a $9,000.00 contract.[1] Pursuant to the contract, Cox was to construct an addition to Morlang's house.[2] When Cox and Morlang entered into the construction contract, Cox did not have a contractor's license. Morlang was aware that Cox did not have a contractor's license, although he had fifteen to twenty years of contracting experience. Morlang testified that Cox told her he had a Roanoke County business license which permitted him to legally perform the contracting work without a contractor's license. Cox testified that he believed he did not need a contractor's license at the time he entered into the contract with Morlang. Cox also denied making any assertions to Morlang about a Roanoke County business license.

Cox performed the work of the contract until March 22, 1995, when he walked off the job. He claimed that Morlang was requiring him to perform work not called for by the contract. He also claimed that he had incurred $9,655.43 in costs up to that point, thereby exceeding the $9,000.00 he was to receive under the contract.

Morlang sued Cox for breach of contract. The claim was for expenses incurred by Morlang in completing and repairing Cox's work. Morlang obtained a state court judgment against Cox for $7,179.00 plus interest. In addition, Cox was convicted of contracting without a state license under Virginia Code § 54.1–111.

Cox filed a Chapter 7 no asset case on January 22, 1997. On April 8, 1997, Morlang brought this action seeking a declaration that the debt owed to her was not dischargeable under 11 U.S.C. § 523(a)(2)(A). The Bankruptcy Court held an evidentiary hearing on this matter on November 13, 1997. On December 5, 1997, the Bankruptcy Court ordered that the state court judgment was non-dischargeable under § 523(a)(2)(A). Cox's appeal of that determination is before me now.

## DISCUSSION

### I. Issue

Did the United States Bankruptcy Court err in concluding that the state court judgment was not dischargeable under 11 U.S.C. § 523(a)(2)(A)?

### II. Standard of Review

The District Court, when reviewing a Bankruptcy Court's decision, "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings ." Fed. R.Bankr.P. 8013. "[T]he Bankruptcy Court's factual determinations are subject to deference and shall not be set aside unless clearly erroneous, while its conclusions of law are subject to de novo review." *United States v. Easley*, 216 B.R. 543, 545 (W.D.Va.1997) (citing *In re Linkous*, 141 B.R. 890, 892 (W.D.Va.1992)). "A factual finding is clearly erroneous when 'although there is evidence

---

1. The contract was for a total of $9,000.00. Morlang paid $6,000.00 upon signing the contract. It is unclear if she ever paid the remaining $3,000.00.

2. Since the contract was for more than $1,000.00, Cox could not legally perform the work on Morlang's house without a contractor's license. Va.Code §§ 54.1–1100–1135.

to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re Ammirati,* 187 B.R. 902, 906 (D.S.C.1995) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)), *aff'd,* 85 F.3d 615 (4th Cir.1996).

## III. Analysis

■ Section 523 provides in pertinent part that:

(a) A discharge ... does not discharge an individual debtor from any debt ...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ...

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523.

■ To except a debt from discharge under § 523(a)(2)(A), the creditor must prove by a preponderance of the evidence that (1) the debtor made a false representation; (2) the debtor knew the representation was false; (3) the debtor intended to deceive or defraud the creditor; (4) the creditor relied upon the debtor's representations; and (5) the creditor sustained loss as a proximate result of the representation. *In re Kahler,* 187 B.R. 508, 511 (Bankr.E.D.Va.1995) (citations omitted).

After reviewing the evidence in this case, the Bankruptcy Court found that Cox's debt was non-dischargeable under § 523(a)(2)(A). Specifically, the court made the following factual findings: (1) that Cox represented to Morlang that by virtue of his Roanoke County business license he could legally perform the construction contract without a contractor's license; (2) that this statement was false, that Cox knew it was false, and that he intended to induce Morlang to rely upon the statement and enter into the construction contract; (3) that Morlang did rely upon Cox's statement in entering the construction contract; and (4) that Morlang suffered damages of $7,179.00 in completing and repairing the work performed by Cox and that these damages were a direct result of her reliance upon Cox's false representation. *In re Cox,* 97–00218–RKR–7, Slip op. at 1–3 (December 5, 1997); Transcript at 60–65.

I have reviewed the testimony and evidence presented at the November 17, 1997 hearing and the Bankruptcy Court's findings of fact. The evidence clearly supports the Bankruptcy Court's findings that Cox knowingly made a false representation with the intention of inducing Morlang to enter into the construction contract. The evidence also supports the Bankruptcy Court's finding that Morlang relied upon Cox's representations when she entered into the contract. The only difficult issue for this appeal is whether or not there is a sufficient causal relationship between the fraudulent misrepresentation and the damages incurred by Morlang.

■ Several jurisdictions have held that the only money which can be excepted from discharge is the actual money received directly by the debtor from the creditor due to the debtor's fraudulent misrepresentations. *See In re Suter,* 59 B.R. 944, 946–47 (Bankr. N.D.Ill.1986) (limiting non-dischargeability to amounts actually received by debtor from creditor by means of fraud); *In re Grubbs,* 9 B.R. 499, 501 (M.D.Ga.1981) (" 'Obtaining money' is capable of but one meaning, that is the direct transfer of money from a creditor to a debtor."). The monetary debt at issue in the instant case never directly passed from Morlang to Cox. The damages, as found by the Bankruptcy Court, are the expenses incurred by Morlang in completing and repairing the work called for under the construction contract. If *Suter* and *Grubbs* control this issue, then the damages as found by the Bankruptcy Court cannot be excepted from the discharge under § 523(a)(2)(A).

Other jurisdictions have disagreed with *Suter* and *Grubbs. See, e.g., In re Taylor,* 195 B.R. 624 (Bankr.M.D.Pa.1996) (recognizing that § 523(a)(2)(A) may be applied to declare a debt non-dischargeable where a third party obtained the money instead of the debtor); *In re Baietti,* 189 B.R. 549, 555 n. 9 (Bankr.D.Me.1995) (§ 523(a)(2)(A) "does not expressly require that the debtor be the one to have obtained" the money, property, services, or an extension, renewal, or refinanc-

ing of credit); *In re Carroll,* 16 B.R. 494 (D.Minn.1982) (applying § 523(a)(2)(A) where third party and not debtor obtained the money).

The Bankruptcy Court in the Middle District of North Carolina disagreed with the holdings in *Suter* and *Grubbs* in a case factually similar to the case at bar. *In re Bozzano,* 173 B.R. 990 (Bankr.M.D.N.C.1994), *abrogated on other grounds, Cohen v. de la Cruz,* — U.S. —, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). In *Bozzano,* the creditor/plaintiff purchased a home from the defendant/debtor. Soon after closing on the home, the creditor began to experience problems with the home. The creditor incurred substantial costs in repairing the defects in the home. *Id.* at 991–92. The court began its analysis by recognizing that this was not the "paradigmatic case for application of § 523(a)(2)(A)" because it was not a case where the creditor simply provided money to debtor in reliance upon his fraudulent misrepresentations. *Id.* at 992. According to the court, "§ 523(a)(2)(A) has been interpreted to make nondischargeable the loss or damage sustained by a creditor as a result of being induced into virtually any type of business transaction by fraud, false representations or false pretenses on the part of the debtor." *Id.* The Bankruptcy Court then applied the aforementioned five pronged test and concluded that the creditors could recover for the expenses incurred in repairing the defects in their home. *Id.* at 993–96. Under this second line of cases, it is apparent that Morlang could recover the costs incurred in completing and repairing the work performed by Cox despite his Chapter 7 bankruptcy.

Any question as to which line of cases controls my examination of the instant case was recently resolved by the Supreme Court in *Cohen v. de la Cruz,* — U.S. —, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). In that case the Supreme Court went a step beyond *Bozzano.* In *Bozzano,* the Bankruptcy Court limited the creditor's recovery to the damages actually incurred by the creditor as a result of the debtor's fraudulent misrepresentations. The court did not allow recovery for treble damages and attorneys' fees under a relevant North Carolina statute. In *Cohen,*

however, the Supreme Court held that nondischargeability should apply to "any debt" related to the fraud, even statutory treble damages and attorneys' fees. The unanimous Court held that "§ 523(a)(2)(A) prevents the discharge of *all* liability arising from fraud...." *Id.* at 1215 (emphasis added). After a thorough analysis of the statute, the Court went on to state that "§ 523(a)(2)(A) is best read to prohibit the discharge of *any* liability arising from a debtor's fraudulent acquisition of money, property, etc...." *Id.* at 1217 (emphasis added). Thus, I read *Cohen* as supporting a more expansive construction of § 523(a)(2)(A) than *Bozzano.*

In the case at bar, Cox fraudulently coerced Morlang to enter into the construction contract and to convey to him at least $6,000.00. As a result of this fraudulent misrepresentation, Morlang incurred over $7,000.00 in costs to complete and repair Cox's work. This liability of Cox arose as a result of his fraudulent misrepresentation. Accordingly, I conclude that there is a sufficient causal relationship between Cox's fraudulent misrepresentation and the damages suffered by Morlang.

## CONCLUSION

For the aforementioned reasons, the judgment of the United States Bankruptcy Court is AFFIRMED.